JOHN A. MELLENDY *et al.*

*v.*

C. DEAN AUSTIN *et al.*

69 15
27a 423

69 15
37a 574

69 15
141 582

69 15
45a 204

69 15
67a 202

69 15
70a 312

1. CHANCERY—*relief against judgment—sufficiency of bill to show misapplication of a fund.* A bill in equity to obtain relief against a judgment at law showed that the plaintiff in the judgment sold one A, a peddler, goods, for which A gave the notes embraced in the judgment, with the complainants as sureties, who became such under the agreement of all the parties that A should sell the goods and apply the proceeds from time to time until the notes should be paid; that the plaintiff continued afterwards to sell goods on a credit to A until he failed, when he owed the plaintiff about $700 on account; and that, after the giving of the notes, A sent the plaintiff, at different times, about $1800, and more than enough to have paid the notes, which was applied in payment of the subsequent account: *Held,* that the bill was defective in not charging that the goods for which the notes were given had been sold by A, or that A had received any money for them, or if so, that he sent it, or any part of it, to the plaintiff in the judgment. Unless this were so, there could be no misapplication of the fund, which was their security, and consequently no breach of the agreement by the plaintiff.

2. PAYMENT—*misapplication of, as against rights of surety.* If the payee of notes given for the purchase of goods agrees with the purchaser and his sureties that the proceeds of the goods, when sold by the purchaser, shall be received in payment of the notes, this will constitute the proceeds of the sale a fund for the payment of the notes, and the payee can not, without the consent of the sureties, apply the same when paid to him on some other indebtedness of the principal.

3. SAME—*what regarded as such at law.* Where goods are sold to A, who gives his notes for the price, with sureties, under an agreement that he is to peddle the same and the proceeds shall be taken and applied in

payment, the proceeds, when received by the payee, will be a payment on the notes, and the payee will have no right to appropriate it to any other purpose without the assent of the sureties. The defense in such a case is complete at law under the plea of payment.

4. CHANCERY—*relief against judgment where there was a defense at law.* Where a party has a defense at law in a suit against him, he must use every reasonable effort to make it before a court of equity will relieve him, and usually a high degree of diligence will be required, and the accident shall not only have occurred preventing the defense, but it must also appear that it could not have been remedied by the use of all reasonable precaution and effort.

5. Where a party seeking relief against a judgment showed that he sent a draft by mail to his attorney, on the 13th day of May, with which to take the deposition of a witness, which the attorney never received, and supposing the defense was abandoned, made no preparation for trial, and the case was tried September 9 following, resulting in a judgment for the sum claimed by the plaintiff, and it also appeared that the defendant resided only about 150 miles from the place where the court was held: *Held*, that the party was guilty of such negligence, in preparing for his defense at law, as to prevent a court of equity from interfering with the judgment.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in chancery, filed by John A. Mellendy and Noah Green, against C. Dean Austin and Allan McClure, impleaded with Augustus Johnson. The opinion of the court contains a sufficient statement of the case and its leading facts.

Mr. J. H. KNOWLTON, for the appellants.

Mr. SANFORD B. PERRY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The bill in this case alleges that one Augustus Johnson was a peddler; that Austin was a merchant in Chicago; that the former purchased of the latter goods to the amount of $1307.58, and gave his notes therefor with appellants as his sureties; that it was understood and agreed by the parties

that Johnson should sell the goods and apply the proceeds from time to time until the notes should be paid, and these were the conditions upon which appellants became his sureties on the notes; that Austin continued to sell goods to Johnson on credit until the failure of the latter, when he owed Johnson about $700 on account; that after the notes were given to Austin, Johnson sent him, at different times, about $1800, and more than enough to have paid the notes, and which should have been applied to their payment, but no part of that sum was endorsed as a credit thereon; that Austin, after Johnson had failed, conceived the idea of applying the money thus sent him, on the account, and only credited one of the notes, and fraudulently sued upon the other two, and after defendants were served with process they filed the plea of the general issue; second, a plea of payment, and a plea setting up the agreement specified in the bill; that on the 9th day of October, 1871, the papers and all files in the case were consumed by fire; that in May, 1872, upon leave of the court, the papers and record in the case were restored; that at the time of the restoration of the record, complainants' attorneys wrote to Mellendy, informing him that they must have $25 to pay the expense of taking the deposition of one Ailsworth by commission, and that the letter was received through the mail, and Mellendy, a few days thereafter, answered the letter, inclosed $25, in a draft payable to the order of his attorneys, and sent the same by mail to them; that complainants fully believed they had received the letter and draft, and never knew or heard to the contrary until the 1st of October, 1872, when Johnson informed them that the attorneys had not received the letter or draft, and as they had received no reply to their letter, they supposed that all further defense had been abandoned by complainants; that complainants had never abandoned the idea of defending the suit, but were relying on their attorneys to prepare the defense and give them notice of the trial; that had the deposition of Ailsworth been taken, he would have testified to the agreement

2—69TH ILL.

upon which the notes were given, and that Austin had received the various sums paid by Johnson after the notes were given; that the attorneys, not having received any reply to their letter, gave no further attention to the case, under the supposition that the defense was abandoned; that on the 9th day of September, 1872, the cause was tried, and a judgment for $831.52 was recovered against complainants and Johnson, and that execution had been issued and was in the hands of an officer for collection; that Johnson is insolvent.

The bill prays that a new trial be decreed, and that Austin be perpetually enjoined from collecting the judgment.

At the November term of the court below, Austin appeared, filed affidavits and moved the court to dissolve the injunction. The court having heard the evidence adduced, found the equities of the case with defendants. and dissolved the injunction and dismissed the bill, at complainants' costs, and they bring the case to this court.

The allegations are not specific. After alleging that it was agreed that the goods for which the notes were given should be sold and the proceeds of the sale should be applied, it is not charged that the goods were sold or that any money was received from such sale, or that it, or any part of it, was sent to Austin. They do charge, however, that Johnson purchased other goods, from time to time, on credit, and that he had sent Austin, at various times, money amounting in the aggregate to about $1800, being more than sufficient to have paid the notes.

The facts, if true, do not show a breach of the agreement. From anything the bill discloses, we can not say that the goods have ever been sold, the money received for them. or if received, that the money arising from their sale had been sent to Austin. If other money was sent to him, that was no breach of the agreement by Austin. Or if Johnson has not sold the goods or received the money for them, or having received it, has appropriated it to other purposes, then it is Johnson, and not Austin, who has failed to keep faith and to

perform the agreement. Relying upon the misapplication of a security or fund as a defense, it must be shown that the particular fund or security has been misappropriated.

But even conceding that this bill did contain the necessary allegations to show that the fund was misapplied, still it would be a defense at law. If Austin received the proceeds of the sale of these goods, his agreement with the sureties that the money, when received, should be applied to discharge the notes, his applying them to another indebtedness would have been an act of bad faith, and the sureties could have insisted that the money received, according to the terms of the agreement, should be applied as a payment on the notes. Such an agreement constituted the proceeds of the sale a fund out of which the notes were to be paid. and it could not, without their consent, be applied to some other indebtedness; and such a defense can be made at law under the plea of payment. If received under the agreement, it was a payment on the notes, and the holder had no right to appropriate it to any other purpose without the assent of the sureties.

Again, there was an entire want of diligence on the part of complainants. They allege that the draft was sent to their attorneys on the 13th of May, and the trial was not had until the 9th of September following, wanting but four days of four months, and no inquiry was made in reference to the case or whether the draft was received. Such inattention and neglect seems to us as being extraordinary. Only about 150 miles from Chicago, where communication could probably have been had by mail almost daily—when, by railroad, they no doubt could have reached Chicago in a few hours, it seems to be remarkable that they neither wrote nor went to learn whether the draft had been received, and whether preparations were made for their defense. No prudent and ordinarily careful man, it seems to us, would have been so negligent of important interests as complainants have shown themselves in this matter. When a party has a defense at law, he must

use every reasonable effort to make it, before a court of equity will relieve; and usually a high degree of diligence will be required, and the accident shall not only have occurred, but it must appear that it could not have been remedied by the use of all reasonable precaution and effort. Appellants have failed to show such diligence, and can not invoke the aid of the court to relieve them from the effects of their negligence.

The decree of the court below is affirmed.

*Decree affirmed.*