McGeoch v. Hooker.

PETER McGEOCH ET AL.

v.

STEPHEN G. HOOKER.

1. PRIMA FACIE CASE.—A general statement by the plaintiff as a witness that the defendant is indebted to him in a certain sum is a mere conclusion of the witness, and is not such a statement of facts as will warrant the jury in finding a verdict in his favor. The circumstances of the transaction should be given in evidence, leaving to the jury to decide from them whether or not there is an indebtedness.

2. AGENCY—RATIFICATION—SILENCE.—When the relation of principal

11 649
46 573
11 649
57 529
11 649
60 431
11 649
63 322
11 649
67 320
11 649
69 669
11 649
77 119
79 221
11 649
86 358

11 649
213s ²591

and agent exists, but in the particular transaction the agent has exceeded his authority, an intention to ratify will be presumed from the silence of the principal beyond a reasonable time after having knowledge of the transaction, if he has an opportunity to express his dissent.

3. APPLICATION OF ABOVE RULE.—Plaintiff had employed defendants to buy commodities on the Board of Trade. The market declining, defendants sold the commodities purchased, and directly afterward presented plaintiff with a full statement of account between them, showing a balance in their favor. Plaintiff remained silent until a change in the market advanced the price of the commodities purchased, when he brought suit to recover for the advanced price. *Held*, that by remaining silent an unreasonable time after receiving the statement of account he would be presumed to have ratified it.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding. Opinion filed November 29, 1882.

This was assumpsit by appellee, Hooker, against appellants, McGeoch & Co., to recover damages in respect to certain dealings on the Board of Trade of the city of Chicago. The declaration contains seven special counts, and the common counts. The first special count (and the six others are like it except that they are based each on different transactions) alleges in substance that defendants, May 2, 1881, as commission merchants, and under the rules of the Board of Trade, purchased for plaintiff 10,000 bushels of wheat at $1.03¾ per bushel, plaintiff having put up the requisite margins to protect defendants. That said wheat was to be received by defendants for plaintiff whenever the same should be tendered by the seller, any day during the month of June, 1881. That it was the duty of defendants, *under said rules*, to carry said wheat for plaintiff until the last day of June, 1881, if no more margins were required; that if more margins were required it was the duty of defendants to notify plaintiff of that fact. That on the 11th day of June, 1881, defendants, without authority, and without giving plaintiff notice to deposit more margins, sold said 10,000 bushels of wheat at the rate of $1.02¾ per bushel. That after said sale the price of said wheat advanced to $1.15 per bushel. That by reason of said wrongful sale, said defendants were liable for the difference between that and the purchase price.

The declaration was subsequently amended by alleging that the Board of Trade was at the time a corporation, and also setting up the rules of the Board in relation to margins, and the steps authorized to be taken, for a failure to put up additional margins, on notice, etc.

The defendants pleaded the general issue, and a plea of set-off to which was attached their account against appellee, showing a balance due from him to appellants, of $700.04. Subsequently the defendants filed an additional plea, setting up a custom on the Board of Trade, etc., which need not be here stated.

There was a jury trial resulting in a verdict for the plaintiff, for $3,437.81. Defendants' motion for a new trial being overruled, the plaintiff had judgment on the verdict, and the defendant appealed to this court and assigns various errors, among others the admitting of improper evidence on the part of appellee, and overruling defendants' motion for a new trial. The facts sufficiently appear in the opinion of the court.

Mr. Emery A. Storrs, for appellants.

Messrs. Bisbee, Ahrens & Hawley, for appellee; that the facts of the purchase and sale of the property being admitted by the special plea, it was not necessary for the plaintiff to prove them, cited Morgan v. Corlies, 81 Ill. 72; Stoner v. Millikin, 85 Ill. 218; Palmer v. Harris, 100 Ill. 276; Hopkins v. Medley, 97 Ill. 402.

It was necessary to notify plaintiff that his margins were exhausted, before sale could be made: Mœller v. McLagan, 60 Ill. 317; Corbett v. Underwood, 83 Ill. 324; Baker v. Drake, 66 N. Y. 518; Guman v. Smith, 81 N. Y. 5; Ritter v. Cushman, 35 How. Pr. 284; Hauks v. Drake, 49 Barb. 186; Stenten v. Jerome, 54 N. Y. 480; Markham v. Jandon, 41 N. Y. 235.

The broker must also give notice to the customer of the time and place of sale: Stewart v. Drake, 46 N. Y. 449; Fletcher v. Dickenson, 89 Mass. 23; M. C. & B. Co. v. Lewis, 12 N. J. Eq. 323.

Plaintiff was entitled to recover the difference between the value of the property at the time they should have delivered it, and the purchase price: Sleuter v. Wallbaum, 45 Ill. 43; Deere v. Lewis, 51 Ill. 254; Smith v. Dunlap, 12 Ill. 184; Saladin v. Mitchell, 45 Ill. 79; Ullman v. Kent, 60 Ill. 271; Phelps v. McGee, 18 Ill. 155; Benjamin on Sales, § 78.

WILSON, J.   Before considering the main objection to the plaintiff's right of recovery, it may not be out of place to notice the somewhat novel manner in which the case was tried. The plaintiff was sworn as a witness, and was asked, "Do the defendants owe you any money?" He answered "They do," and being asked how much, he said $3,437.31, and that there was no set-off.

The defendants waived a cross-examination and the plaintiff rested.   This was the entire case as made by the plaintiff. It is obvious that upon such a showing, the plaintiff was not entitled to recover.   In an action of debt or assumpsit, the question as to whether or not an indebtedness exists, is a conclusion which the jury must draw from facts proven.   The existence of an indebtedness, unless admitted, depends upon the existence of certain antecedent facts to be shown by evidence.   Here the testimony was merely the conclusion of the witness, and such conclusion can not be substituted in place of proof of facts, which alone form a proper basis for the finding of the jury.   It is familiar law that a witness, except in a certain class of cases, can only testify as to facts, and not to his deductions or conclusions.   The jury must find the facts, and draw therefrom their own conclusions.   See Keith v. Bliss, 10 Bradwell, 424, and the authorities there cited.   Sedg. on Dam. (6th Ed.) 748, et seq.   Under the common counts in an action of assumpsit, the averment that the defendant is indebted to the plaintiff, is merely the conclusion drawn from the facts alleged, namely the defendant's promise to pay and the breach thereof.   No one would claim that a count which should simply allege that the defendant was indebted to the plaintiff in a certain sum, without any other averment, would be good.   And if such a count would not be sufficient to show a cause of action, it would seem to follow

as a corollary that a mere statement by a witness that the defendant owes the plaintiff, without proof of any consideration or promise, either express or implied, or of any antecedent fact, would not be sufficient.

Nor does it avail appellee to say that appellants might have cross-examined appellee, and thereby have tested the correctness of his conclusion. The burden of making out a case rested upon the plaintiff, and the defendants were under no obligation to cross-examine his witness; and no unfavorable inference is to be drawn from an omission to cross-examine, in respect to testimony which was incompetent and to which the defendants objected on that ground, when it was offered. A party is always at liberty to cross-examine or not, as he sees fit.

From what has been said it follows, that if the defendants had stopped when the plaintiff rested his case, they would have been entitled to a verdict, as the plaintiff had put in no evidence in support of his special counts, and no competent evidence under the common counts. But the defendants chose to proceed with their side of the case, and were sworn as witnesses in their own behalf. Following the example of the plaintiff, they testified in the same general terms, that they did not owe the plaintiff any money, but that he owed them $700.04. Thereupon the plaintiff sought, upon cross-examination, to prove the allegations in the special counts of his declaration, and this brings us to a consideration of what we regard as the more serious obstacle to appellants' right of recovery.

It appears that all the parties to the suit were, and for some years had been, members of the Board of Trade, and were familiar with its rules, usages and customs. Appellee officed with appellants, and in July or August, 1880, he arranged with them to act as his agents and commission men in buying and selling for him, on the Board of Trade, wheat, lard, and other commodities, on margins to be furnished by appellee from time to time as required. For a time the ventures proved fortunate, resulting in considerable gains to appellee, but in the early part of May, 1881, the market took a sudden turn, prices running down rapidly, and resulting in

serious losses to appellee; whereupon appellants, fearing a still further decline, and to protect, as they claim, both appellee and themselves against further depreciation in value, sold sundry items of wheat, corn, pork and lard belonging to appellee, at a loss of about four thousand dollars. These sales were made May 11th and 14th.

These transactions, running from August, 1880, down to the close of their business dealings, were numerous, and the evidence satisfactorily shows that during the entire period, when a sale or purchase was made, it was reported to appellee without delay, usually on the morning following. There was also evidence tending to show that just prior to the sales of May 11th and 14th, appellants, in view of the rapidly declining market, had interviews with appellee, in which they informed him that his margins were becoming very thin, and notified him that they would be compelled to close his deals unless he should protect them with additional margins; that appellee, yielding to the necessities of the situation, assented, though very reluctantly, to their selling. Appellee denies the giving of any assent, or that appellants notified him of their intention to sell.

Conceding, however, that upon the question of notice the evidence was conflicting to such an extent as to justify the jury in finding that none was given, and that appellee was entitled to such notice under the rules of the Board of Trade, there remains another feature of the case, in view of which we think appellee under the evidence was not entitled to recover, and it is his subsequent acquiescence in the sales. The evidence shows, and it is undisputed, that very shortly after the making of the last sale, on May 14th, appellants made out and delivered to appellee a full and complete itemized account of their dealings as his agents, showing each sale and purchase, including the sales of May 11th and 14th, the receipt and payment of all moneys received and paid out, and showing a balance due to appellants of $700.04. To the account thus rendered, appellee never at any time made any objection down to the commencement of this suit, a period of nearly two months; nor does it appear that he ever objected

to sales when notified they had been made, from time to time, during the continuance of the agency.

. Appellee admits the receipt of the final account as rendered, though he fixes the time of its reception as about the last of May or first of June, but it is not claimed that he made any objection thereto before the bringing of suit, July 16th thereafter. If he did not intend to be bound by the acts of his agents in making the sales as shown by the account, it was his duty to have promptly notified them that he objected to the same, and thus have enabled appellants to buy in the commodities sold at a lower price, if opportunity presented, and thereby obtain the benefit of an advance in prices, should one occur, and which appellee alleges in his declaration did in fact occur. Instead of doing so, he remained wholly silent until prices had advanced, and then brought his suit. His silence under the circumstances was an acquiescence in and ratification of the acts of his agents. He waited an unreasonable time before making known his objection, and must be held to be bound by their acts.

Whatever may be the rule as to the duty of a person to disclaim, when notified, that a stranger, a mere volunteer, has assumed to act as his agent, the doctrine is settled that when the relation of principal and agent exists, but in the particular transaction the agent has exceeded his authority, an intention to ratify will be presumed from the silence of the principal beyond a reasonable time, if he has opportunity to express his dissent. Story on Agency, (9 Ed.) § 256, et seq. and notes; Ewell's Evans on Agency, side p. 64, et seq; Livermore on Agency, 38–40.

And some of the cases hold that it is the duty of the principal to disaffirm as soon as he is informed of what has been done. Thus in Ward v. Williams, Caton, C. J., says: " In general, where an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act so soon as he has been fully informed of what has been done in his name by the agent, else he will be bound by the act as having ratified it by implication; but where a stranger in the name of another does an unauthorized

act, the latter need take no notice of it, although done in his name, and he shall only be bound by an affirmative ratification."

See also Meister et al. v. Cleveland Dryer Co., decided by this court at the last term. But for our present purpose it is sufficient to say that the act of the agent must be objected to within a reasonable time after the principal has been notified of the act, otherwise he will be deemed to have ratified it.

The same principle obtains in cases of accounts rendered between merchant and merchant. If the account is not objected to within a reasonable time after being received, it becomes an account stated between the parties, and is to be treated as admitted. 41 Ill. 295. Mr. Greenleaf says: "Thus, also, among merchants it is regarded as the allowance of an account rendered, if it is not objected to without unnecessary delay." 1 Greenl. side p. 197. Authorities might be multiplied indefinitely to show that in all the varied business transactions of men, wherever the relation of principal and agent exists, it is the duty of the principal to repudiate the unauthorized act of his agent as soon as he reasonably can after it has come to his knowledge, or he will be held to have ratified it. Here, with full knowledge of all the facts, and at a time when the market was greatly unsettled, and prices rapidly fluctuating, appellee remained silent, and his silence was for an unreasonable time. We think the verdict was so manifestly against the evidence that it ought not to be allowed to stand.

The judgment of the court below is reversed, and the cause remanded for a new trial.

Reversed and remanded.