CHARLES HAWKINS ET AL.

v.

GEORGE F. HARDING.

*Judgments—Suit to Enjoin Collection of—Evidence—Negotiable Instruments—Payment—Pleading—Principal and Surety—Contracts— Practice—Evidence.*

1. Where two parties possessing equal interests testify diversely touching a given circumstance, the case stands as if neither had testified.

2. The law will presume payment of a note surrendered by the payee to the maker after maturity.

3. A payee of notes, to which the accommodation note of a third person was given as collateral security, can not collect in suit thereon, in case of default in payment of the notes secured, more than the amount due upon them, where said collateral note calls for an amount larger than the indebtedness.

4. There can be no recovery upon such note where the notes it was given to secure have been surrendered to their maker.

5. Allegations in an answer to a bill of chancery, consisting of new matter not in response to the allegations of the bill, to be of any avail must be duly proved.

6. A court can not find and act upon the truth of an allegation from the testimony of a witness who can not remember and tell with reasonable certainty what the facts were to which the allegation relates.

7.    Where a surety is sued at law, he must, if he can, make his defense there, and if he neglects to do so he can not afterward have relief in chancery.

8.    It is a defense for a surety at law that the creditor has wrongfully deprived him of recourse to collateral security held by the creditor, to which the surety had the right of subrogation, and this even when the contract to which the surety is a party is under seal.

9.    In an action upon a contract, whatever, either at law, or by the rules of equity to which courts of law can give effect, operates to discharge or extinguish the claim upon the contract, is a defense thereto.

10.    The common law rule that no specialty can be avoided but by an instrument of as high a nature, and that a judgment, being a security of the highest character, can not be avoided by a writing not under seal, has been departed from in this State only in so far as to allow defenses in actions on contracts, analogous or equivalent to payment; and in actions upon instruments which are covered by the statute concerning negotiable instruments, want of, or fraud in the consideration may be shown, but as to a sealed instrument not within that statute, fraud in the consideration can not at law be made a defense.

11.    Nor to such an instrument can it be made a defense at law that the parties have modified or changed it by a subsequent agreement not under seal; and this is so, though the defense is made by a surety, and the change is by a written but not sealed contract, upon adequate valuable consideration.

12.    Grounds of defense not pressed must be considered waived.

[Opinion filed January 16, 1891.]

Appeal from the Circuit Court of Cook County; the Hon. O. H. Horton, Judge, presiding.

Mr. D. Blackman, for appellants.

The gravamen of complainants' bill is an attempted misuse by Harding of his position as a trustee for Whipple and complainants, by taking an unjust and inequitable advantage of his legal title to the judgment, and the inability of complainants to defend themselves at law. The court is asked to restrain an abuse of trust, as in Higgins v. Curtiss, 82 Ill. 28; Batement v. Willoe, 1 Schoales & L. 205; McGehee v. Gold, 68 Ill. 216.

That Harding is a trustee, see Union Trust Co. v. Rigdon, 93 Ill. 458; Stevens v. Bell, 6 Mass. 343.

Assuming it to be true that there is no plea in an action of debt on judgment, by which the ground of relief stated in

complainants' bill could be pleaded, complainants' case is that of Weaver v. Poyer, 79 Ill. 417, and Gregg v. Brower, 67 Ill. 525. Wharton on Ev., Sec. 774.

Assuming it to be true that complainants did not know and did not find out the evidence of the payment of the five principal notes, until after the December term, 1888, of the Superior Court, complainants' case is that of Wilday v. McConnell, 63 Ill. 278, and Story's Eq. Jur., 10th Ed., Sec. 894. Gainsborough v. Gifford, 2 P. Williams, 424.

The note for $3,500, dated December 20, 1866, made by complainants, payable to R. M. Whipple & Co., was an accommodation note, for which complainants never received any consideration from any one. By the terms of the receipt given by Harding to Whipple, this note was to be returned to Whipple when the principal debt was paid. If returned to Whipple, it would have been his duty to return it to complainants, because it was made for the sole purpose of being used as a collateral to this debt alone of $32,000, and was without consideration. Story on Bailments, Sec. 340.

But the note was merged in the judgment of May 8, 1867. Its return, if Harding had not filed it, would not in any degree have affected the validity of the judgment, because the judgment was entered before any part of the principal debt was paid. It would, at best, but serve as evidence in a proceeding to stay execution on the judgment. But upon the principle of the decision in Jones v. Hawkins, 17 Ind. 550, the judgment stands as a collateral in place of the note. By the receipt of December 19th, the uncollected collaterals were to be returned, and the only way the judgment could be returned would be to assign it to Whipple. As Whipple could not collect the note he had no right to collect the judgment in equity, and should have satisfied it.

Stoddard v. Kimball, 6 Cush. 469: This case holds that the payee of an accommodation note can not collect it of the maker, and the pledgee can collect only to the extent of his debt.

When Harding took the judgment on the note, May 8, 1867, the whole $32,000 was unpaid. Of course this judg-

Hawkins v. Harding.

ment was valid then against complainants, no matter how erroneous. Wharton on Ev., Sec. 784.

But within about two years thereafter Harding collected $15,000 of the money due on the assigned policies and $3,600 on the Lombard orders, for which he gave receipts. Whipple also gave him $20,000 in Rivington notes for which Harding gave him a receipt showing how he applied the money on the five notes. Afterward, perhaps May, 1873, when he settled with Whipple the foreclosure suit, he gave up the five notes, which were marked paid. From this moment Harding's special property in the collaterals ceased, and it became his duty to surrender them to Whipple, or he might surrender the $3,500 note, if he had it, or assign the judgment of May 8, 1867, to complainants.

Story on Bailments, Sections 359, 339 and 340: In section 340 it is said pledgor may return the pledge to the true owner or the real party entitled to it.

Whatever defense there might be against the May 8th judgment after May, 1873, that defense was an equitable one. It depended on these facts, which admit the validity of the judgment, as in Weaver v. Poyer, but deny that Harding or Whipple had a right to the money.

Vennum v. Davis, 35 I. 568, is another case where a legal defense could not be made because of want of proof at law. Harding says the facts above set out could have been pleaded in bar to action of debt, but he gives no name and no form to his plea. I know of none. Any defense at law would have involved the question of payment of the principal debt, a matter between Whipple and Harding, and the question of the note being accommodation paper, a matter between Hawkins and Whipple, for the purpose of establishing the ultimate fact that Harding ought not to get the money for himself, but it would have left the rights of Whipple, if any, unadjudicated, as he was not a party. Equity alone furnishes a full and complete remedy, as was held by Judge Hawes (Wharton, 786) and affirmed by this court in case 3403.

That the above facts furnish grounds for equitable relief, has been settled by the judgment of this court, and is now no longer an open question between these parties. See bill of

exceptions and decision of this court in Hawkins v. Harding, No. 3403; Gulliver v. Baird, 9 Ill. App. 421.

Mr. WILLIAM J. AMMEN, for appellee.

Injunctions are not favored, especially when it is sought to enjoin collection of judgment of law. Defendant must show good defense not available at law, or which he failed to discover after due diligence, in time for the trial of suit at law, or which he was prevented from making on the trial of the suit at law, by mistake, accident or fraud, without fault or neglect on his part.

As directly in point on this whole subject we cite 1 High on Injunctions, sections 113, 114, 116, 117, 126, 132, 162, 165, 166, 167, 168, 170, 171, 178, 180, 190, 194, 210, 216, 217, 222 and 265. Also 3 Pomeroy's Equity Jurisprudence, paragraph 1361 and foot note, especially that part of foot note on p. 396. Also Id., paragraph 1364 and note, especially that part of note on page 401. Also on the entire subject of granting new trials in equity on account of newly discovered evidence, see Hilliard on New Trials, chapter 18, especially the following sections of that chapter, namely, sections 2, 3, 4, 5, 18, 19, 23, 33, 45 and 46a.

As directly in point, see, also, Fuller v. Little, 69 Ill. 229; Warren v. Cook et al., 116 Ill. 199; Tone v. Wilson, 81 Ill. 521; Winchester v. Grosvenor, 48 Ill. 517; Palmer v. Bethard et al., 66 Ill. 529; Blanchard v. Williamson, 70 Ill. 647; Kern v. Strausberger et al., 71 Ill. 413; Mellendy et al. v. Austin et al., 69 Ill. 15; Smith v. Allen, 63 Ill. 474; Holmes v. Stateler et al., 57 Ill. 209; Hinrichsen v. Van Winkle et al., 27 Ill. 334; Scott v. Whitlow, 20 Ill. 311; Buntain v. Blackburn, 27 Ill. 406. See, also, 2 High on Injunctions, Sec. 1383. Also Parker v. The Singer Manufacturing Company et al., 9 Ill. App. 383. Also Higgins v. Bullock, 73 Ill. 205; Railroad Co. v. Field, 86 Ill. 271; Town of Lyons v. Coolidge, 89 Ill. 529; Allen v. Smith, 72 Ill. 333, and Clark v. Ewing, 93 Ill. 577. Also Burns v. People, 126 Ill. 284; O'Neil v. O'Neil, 123 Ill. 363; Petefish v. Watkins, 124 Ill. 387; Sterling v. Merrill, 124 Ill. 524; Isaacs v. People, 118 Ill. 539; Welker v. Hinze, 16 Ill. App. 326. As showing Mr. Harding's rights

as holder of the $3,500 note, we cite Colebrooke on Collateral Securities, pages 1, 2, 14, 15, 42, 54, 55, 120, 121, 122, 123, 140, 141 and 146.

We confess we are unable to see any application of the case of Curtiss v. Higgins, 82 Ill. 28, or the case of Union Trust Co. v. Rigdon, 93 Ill. 458, cited in appellant's brief, to the case now before this court.

In the cited case of McGehee v. Gold, 68 Ill. 216, it was admitted by demurrer that the surety on note knew nothing of its having been paid; that he used due diligence to ascertain the facts prior to the trial of the suit at law, obtaining a continuance for that purpose, and failed to discover the requisite proof in time for the trial, but afterward discovered such proofs; and, further, that the plaintiff, in the suit at law, though at the time cognizant of the fact of payment, falsely and fraudulently swore that the note was not paid; *held*, that a decree enjoining the collection of the judgment and granting a new trial at law was right. The Supreme Court says in concluding its opinion, on page 217, "The judgment is fraudulent, and appellee is not chargeable with negligence in ascertaining and interposing his defense."

We fail to see how appellants here get any comfort or support from the case last cited, for the reason (1) that no defense is here shown, and (2) whatever defense there was, if any, was known, and the proof at hand in time for the trial at law. It is true that it appears that some papers have been found since the trial of the suit of law, but no diligent effort was made to find them earlier, although they were found later by little effort; and besides, none of these papers were necessary to make out the alleged defense; at most they were merely corroborative of, and cumulative to the testimony Whipple would have given on request, at the trial, which testimony Mr. Harding would have squarely and positively denied, so far as it related to the alleged defense.

GARY, J.    By a receipt, signed by the appellee, Harding, dated December 19, 1866, and in evidence, it appears that on that day he received from R. M. Whipple & Co. five notes, amounting in all to $32,179.47, made partly by Whipple &

Co., and partly by Whipple only, and all becoming due within seven months thereafter.

That as collateral security for those notes Whipple & Co. delivered to Harding, among other things, the note about which this controversy arises, made by the appellants as C. & F. Hawkins, dated December 20 (the year is omitted in the receipt, but in fact it was 1866), due in three months after date, for $3,500. Between Whipple and the appellants this was an accommodation note, though upon the conflict of testimony it must be assumed that Harding had no notice of that fact, at least early enough to affect him in this suit. On the 8th day of May, 1867, the notes of Whipple & Co., and Whipple, being partly due and all unpaid, Harding recovered a judgment against the appellants upon their note, in the Superior Court of (then Chicago, now) Cook County. At some time about which the testimony conflicts, Whipple stating it to have been in May, 1873, and Harding in July, 1869, Harding surrendered to Whipple all the notes made by Whipple & Co., and Whipple, described in the receipt. Why that was done, under what circumstances, the testimony of Whipple and Harding, who alone have any knowledge upon the subject, is in irreconcilable conflict. Their interests in the suit are equal. If the appellants pay, Harding gets his money, and Whipple must reimburse them.

Whipple says he paid the notes; Harding says that they were not paid, but the form of the indebtedness was only changed. In all points where the opportunity is open to them, they contradict each other.

The effect of this conflict is, that the case stands as if neither of them had testified.

There is, then, no explanation of the fact that the notes are in the possession of Whipple, and produced, from his possession, on the hearing. From this alone the law will infer their payment. Walker v. Douglass, 70 Ill. 445; Sutphen v. Cushman, 35 Ill. 186.

It is obvious that the note of appellants, being an accommodation to Whipple, could only be collected by Harding, while, and to the amount, if less than the note, that Whipple owed him. He took " the paper somewhat in the character of a

trustee. He is entitled only to that part of the face value * * * which may be necessary to satisfy his own claim." Tiedeman Com. Pap., Sec. 304.

The possession of the principal notes by Whipple, raising the presumption that he had paid them, there was thereafter in Harding no right to collect from the appellants on the judgment. The judgment was rightly entered in his favor, for the principal debt was then unpaid; but it stood as a pledge or collateral security, as the note upon which it was founded did. The change of the form of the indebtedness did not change the relations of the parties. Upon this partial view of the whole case, it can not be contended that the judgment of May, 1867, should be enforced. If there were no more of the case, the prayer of the bill of the appellants should be granted, and a perpetual injunction against the claim of Harding awarded. Harding defends upon two grounds:

First. His answer to the bill states " that a short time after December 19, 1866, and long before the maturity of said $3,500 note, this defendant, by virtue of a certain transaction with said Whipple, became the absolute and sole owner of said note," and an amended answer states " that shortly after the said collateral was deposited with him by the said Whipple, and before said notes upon which it was deposited as collateral became due, he bought the note of said complainants described in said bill, of the said Whipple, and paid in cash or its equivalent to the said Whipple, the value thereof at par in full."

Both answers deny notice, when purchasing, of any defense by the appellants against Whipple. These allegations of the answers are new matter, not in response to allegations of the bill, and to be of any avail to Harding must be proved by him. 1 Dan. Chy. 844, where there is a great collection of cases in the note.

All the evidence in support of the allegations quoted is the testimony of Harding himself. No blame can attach to a witness for a want of recollection of long past transactions, but a court can not find and act upon the truth of an allegation, from the testimony of a witness who can not remember and tell, with reasonable certainty, what the facts to which the

allegation relates were.  His testimony is made voluminous
by much questioning, but as to the present matter, the result
is this :

"Judge Blackman: Now, Mr. Harding, are you certain
which state of facts is true, that you held this note as collat-
eral for an additional loan, or purchased it?  Which are you
sure about now?"

"A.  I have never said I was sure.  It is twenty-three
years ago or more.  I have never said I was sure.  I said it
was my best recollection.  I know this:  That in some way I
owned it, and never surrendered it as collateral at all, or that
that debt was paid for which it was collateral, never.  One
of these two things is certainly true—or three things, as you
may put it.  I am certain of that.  I have always said that
it was never paid.  I think my original statement is true."

The "original statement" here referred to was, in effect,
that if he had not bought the note of the appellants, when
the form of the indebtedness of Whipple to him was changed,
then he continued to hold it as collateral; but if he had bought
it, that he did not continue so to hold it, but that his recollection
was, that he had taken the note before the judgment, for its
face, from Whipple, and he got credit for it upon the five
notes, or some other indebtedness.

So much of the testimony here repeated as denies the pay-
ment of the five notes must be disregarded, as it is set off
against the testimony of Whipple, leaving the presumption
of payment from the fact of the notes being in Whipple's
possession without rebuttal.

The whole effect of the testimony is in the words, " I know
this, that in some way, I owned it."  Whether he owned it or
not, was a mere conclusion of law which the court would
draw, if the facts could be ascertained.  The certainty in the
mind of the witness that he owned it, or the emphasis with
which he asserts that ownership, gives the court no aid in
drawing a conclusion.   His belief of ownership was not based
upon his recollection of the facts; these he had forgotten.

It is clear that his present certainty comes from his remem-
brance, that when he did know the facts he thought he owned
the note.  Whether he then judged rightly would depend

upon his accuracy as a lawyer, and his impartiality where his own interests were involved.

In principle it is the same character of testimony as was held incompetent in Massure v. Noble, 11 Ill. 531, where an attorney, who had filed a petition for partition, the petition being lost, was permitted to testify " that the petition and all the proceedings were regular and in proper form, and that the petition set forth all that was necessary as to the rights of the parties, and other matters necessary and proper." And see McGeoch v. Hooker, 11 Ill. App. 649.

The allegations of ownership are, therefore, unproved. The answers relying upon that defense, and in no way claiming a present existing lien upon the note or judgment founded thereon, as collateral security, the case stands that Harding has no just claim upon the appellants.

He can not now claim to hold as collateral, for that is inconsistent with his answers. Parkhurst v. Race, 100 Ill. 558; Johnson v. Johnson, 114 Ill. 611.

The ordinary presumption in favor of an indorsee, holding commercial paper, that he took it for value before maturity without notice, etc., does not apply here, because the origin of the title of Harding to the note is shown, and if he claims a new and further title, he must prove it. That presumption applies to the taking of the paper; nothing afterward.

With what right Harding first held the note being known, the presumption is that he continued to hold it in that right. 1 Greenl. Ev. Sec. 41. This ground of defense fails.

Second. On the 6th day of April, 1887, within less than five weeks of twenty years after the entry of the original judgment, Harding sued the appellants in the Superior Court in debt upon the judgment.

The appellants pleaded *nul tiel record*, and he recovered a new judgment for $8,200. He now urges that the appellants, not having successfully defended that suit, are cut off from any relief in chancery.

Undoubtedly the appellants occupied the position of sureties for the payment of the debt of Whipple, even though Harding did not know that their note was an accommodation note. But that position does not help them now.

Whatever may be the conflict of authority elsewhere (Brandt on Guar. Sec. 209), the law of this State is settled, that when a surety is sued at law, he must, if he can, make his defense there, and if he neglects to do so, he can not afterward have relief in chancery. Ramsey v. Perley, 34 Ill. 504; Smith v. Powell, 50 Ill. 21; Mellendy v. Austin, 69 Ill. 15.

And it is also true that by the course of judicial legislation in this State, it is a defense for a surety at law that the creditor has wrongfully deprived the surety of recourse to collateral security held by the creditor, to which the surety had the right of subrogation. Rogers v. Trustees, 46 Ill. 428; Phares v. Barbour, 49 Ill. 370; Kirkpatrick v. Howk, 80 Ill. 122.

And this even when the contract to which the surety is a party is under seal. Rogers v. Trustees, 46 Ill. 428.

Now, though the common law is that to an action for money, due by deed, payment after the day is not a good plea (2 Saunders R. 48b), and it was only by the statute of 4 Anne, not in force here, that such payment could be pleaded, yet there has always, since 1827 at least, been in force in this State a section corresponding to Section 29 of the present Practice Act, recognizing the plea of payment as a good plea in any action upon a contract.

It is within the equity and spirit of that section to recognize, as a defense to an action upon a contract, whatever, either at law, or by the rules of equity, to which courts of law can give effect, operates to discharge or extinguish the claim upon the contract.

The statute of 4 Anne extends to judgments, but we have no equivalent legislation.

In debt upon a judgment, payment is no plea. Kettleby v. Hales, 3 Lev. 119, and see Sewall v. Sparrow, 16 Mass. 24; Gulick v. Loder, 13 N. J. L. 68.

The common law rule is that no specialty can be avoided, but by an instrument of as high a nature; and a judgment, being a security of the highest character, can not be avoided by a writing not under seal. Sewall v. Sparrow, 16 Mass. 24; Shep. Touch. 323; Broom's Leg. Max. 877. The remedy was by *audita quereta.* Com. Dig. that title A. Matter *in pais,*

like error in the record, was no defense to an action upon the judgment, and could only be made available by a direct proceeding to avoid the judgment.

This ancient stringency of the common law has been departed from in this State only in two particulars. One in allowing, under the equity, as I have shown, of Sec. 29 of the Practice Act, defenses in actions on contracts, analogous or equivalent to payment. The other is, that in actions upon instruments, which are covered by the statute concerning negotiable instruments, want of, or fraud in the consideration, may be shown in defense. White v. Watkins, 23 Ill. 480.

But as to sealed instruments, not within that statute, fraud in the consideration can not, at law, be made a defense. Johnson v. Wilson, 33 Ill. App. 639, where the point is decided and the authorities collected in the opinion of Mr. Justice Moran.

Nor to such an instrument can it be made a defense at law that the parties have modified or changed it by a subsequent agreement not under seal. Ill. C. R. R. v. B. & O. & C. R. R., 23 Ill. App. 531, where by court and counsel the cases are collected; and this is so, though the defense is made by a surety, and the change is by a written, but not sealed, contract, upon adequate, valuable consideration. Chapman v. McCrew, 20 Ill. 101.

As to judgments, I do not find that any case has ever arisen in this State in which it could have been made a question whether there should be a departure from the strict rule of the common law as to a plea of payment.

In Rae v. Hurlbut, 17 Ill. 572, it was held that in an action upon a foreign judgment, a plea of set-off was not good at common law, nor warranted by our statute, and therefore was bad.

By statute the common law is to "be the rule of decision," until repealed by legislative authority.

The boasted flexibility of the common law consists, not in abandoning settled rules, but in applying them to new combinations of circumstances, and new agencies of civilization. Legislation was required to change entails into life estates

with remainder in fee; joint tenancies into tenancies in common; joint into joint and several covenants and obligations; to make the word "heirs," or some equivalent unnecessary to carry a fee; to relieve from the penalty of a bond on payment of the actual damages for a breach of the condition; though the hardship and injustice resulting from the old rules have been often flagrant.

The appellants could not have pleaded successfully, when they were sued upon the judgment of 1867, that the note upon which that judgment was founded was an accommodation note to Whipple, and that the debt for which he pledged it as collateral to Harding, had been paid to Harding by Whipple since the rendition of that judgment.

No such defense was cognizable at law. There was no neglect on the part of the appellants in not attempting the impossible. Their remedy was and is only in chancery.

The delay of the appellants in not filing a bill in chancery, while the action upon the judgment was pending, a period of more than twenty months, is not made a ground of defense. It is therefore waived. Walker v. Dennison, 86 Ill. 142.

But such delay is not *laches* within the rule of equity. Mass. Ins. Co. v. Boggs, 121 Ill. 119.

And besides, this is not a case in which the complainants are seeking to obtain from the defendant something that he has, but they seek to prevent him from taking from them by legal process something that they have. The rule ought to be different as to *laches*, where the relief asked is in fact merely defensive, from what it is when the relief asked is aggressive.

The appellants are not chargeable with *laches* in not filing their bill before the action upon the judgment was commenced. The testimony does not show that any demand was made upon them to pay that judgment, after the surrender by Harding of the Whipple notes, until after the record of the judgment had been destroyed by the fire of 1871.

No execution could then issue. Harding was taking no steps to revive or renew it. Delay on his part was operating for their safety.

The judgment existed only in the memory or memoranda of witnesses, and that he left it in that condition for fourteen and a half years, is a foundation as much for the presumption that he had no just claim, as that they had no defense.

On the whole case the decree of the Superior Court must be reversed and the cause remanded, with directions to that court to enter a decree perpetually enjoining the appellee, Harding, from enforcing his judgment.

*Reversed and remanded.*

WATERMAN, J., dissents.