466

## MILLER RUBBER CO. OF NEW YORK v. MASSEY et al.

Circuit Court of Appeals, Seventh Circuit.
November 29, 1929.

Rehearing Denied January 18, 1930.

No. 4180.

Edward L. England, of Chicago, Ill., for appellant.

John C. Slade, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant prosecutes this appeal to review a decree wherein it was enjoined from proceeding with the collection of a judgment by it obtained against appellees and others. The judgment, the stay of which was commanded, was predicated upon a surety contract running to appellant.

The equity suit was grounded upon two contentions: (a) Appellees were prevented from appearing at the trial of the law action through fraud practiced upon them. (b) Appellees had a meritorious defense to the action on the surety contract.

The facts: Massey-Pfundstein Company, a corporation, hereinafter called the dealer, was engaged in the retail rubber tire business, handling appellant's goods. On April 1, 1919, it gave to appellant its first guaranty contract, which was limited to $50,000 in amount and to one year in duration. When this contract was executed, the dealer was handling most of the tires on a consignment plan, though the guaranty contract covered liability for goods sold as well as for the proceeds of goods consigned. During the year, appellant changed its method of doing business from a consignment to a sale account. It demanded, and the dealer furnished, a new bond, signed by the appellees as well as the individual stockholders of the dealer. This bond was for $70,000, but otherwise was quite similar to the one executed the year before.

The dealer became involved financially, and appellant brought an action at law to recover the amount due it. Appellees, the sureties, appeared through their counsel, Snapp, Heise & Snapp, and filed an answer wherein they asserted facts which, if true, disproved liability on the part of the sureties. The cause was set for trial, and defendants' counsel were notified. The day before the trial, they were again notified. On the day of trial, defendants' counsel did not appear. Neither did they notify their clients that the case was set for trial. A verdict in appellant's favor was followed by the entry of a judgment for $22,193.63 and costs. Execution was issued on this judgment, and appellees for the first time learned of the trial of the case and entry of the judgment. The term of court at which the judgment was entered had expired.

Through new counsel, the present suit was promptly begun; the object being to restrain the collection of the judgment.

Upon a hearing upon this bill and the answer of appellant, it was disclosed that appellees in the law action had paid $150 to the above-named attorneys, who drew and filed a verified answer. Later they were given $1,000 worth of rubber tires. The testimony before us offers no satisfactory explanation why

counsel did not appear at the time of trial. No member of that law firm was called as a witness, and the testimony of the witness Massey, respecting the employment of counsel and the payment of fees, stands uncontradicted.

Evidence was also received bearing upon the merits of the case. This testimony was offered to show a want of any consideration to support the guaranty contract and also to show that the indebtedness which was incurred after the execution of the guaranty was paid prior to the commencement of the action.

At the close of the testimony, the court ruled that, unless appellant should promptly file its consent to an order setting aside the judgment, a decree permanently enjoining the enforcement of this judgment would be entered. Appellant refused to file such consent; whereupon the decree appealed from was entered.

Were the appellees, because of their attorneys' default, entitled to relief from the judgment entered against them?

The testimony conclusively established these two facts: (a) Solely through default of their counsel, appellees failed to appear at the trial of the action and were thus prevented from offering their evidence in support of the two defenses pleaded. (b) The default of appellees' counsel was in no way attributable to appellant or its counsel. These facts present a bald legal question, which must be answered against the contention of appellees. U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Winchester v. Grosvenor, 48 Ill. 517; Kern v. Strausberger, 71 Ill. 413; Mellendy v. Austin, 69 Ill. 15; Clark v. Ewing, 93 Ill. 572; 15 R. C. L. 756, 757.

■ ■ The two well-established maxims of the law, interest rei publicæ, ut sit finis litium, and nemo debet bis vaxari pro una et eadam causa, have certain exceptions. But the exceptions are limited to cases where the opposing party or its agent prevented a fair trial. Where there has been no bona fide adversary trial, courts of equity are anxious to grant relief so that complete justice may be done. But their willingness so to act is limited to cases where the unsuccessful party has been prevented from presenting the full strength of its case by reason of something done, something misleading or deceptive practiced by the successful party. No case has been cited to us where relief was granted without a showing that the successful party participated in, or connived at, the misconduct which led the defeated party to neglect or ignore one or more of its defenses.

In Winchester v. Grosvenor, 48 Ill. 517, the court said: "The mere fact that her attorney gave her advice which turned out to be opposed to the judgment of the court, *or the fact that her attorney abandoned the case before the trial,* does not constitute accident or mistake of the character upon which a court of equity acts."

In Clark v. Ewing, 93 Ill. 572, the court said: "If the general health of an attorney breaks down, he should notify his clients of the fact, so that they can take such steps as may be necessary for their protection. Appellant [may] be proceeding on the theory that he is not at all responsible for the negligence of his counsel. The very reverse of this is the law."

15 Ruling Case Law 756 states the law thus: "The failure of the party's counsel to appear in a cause, because of either the neglect or the mistake of the counsel, is ordinarily no ground for equitable interference with a judgment entered by default against such party. * * * It is likewise well settled that a court of equity will not relieve against a judgment at law on the ground that the party against whom it has been taken has a good defense which his counsel, through negligence or unskilfulness, failed to set up."

We might dispose of the appeal without considering the merits of the controversy. But we feel compelled so to do because of the unfortunate position in which appellees found themselves when their attorneys failed to notify them of the trial.

■ It is of course elementary that the relief such as here sought must be denied unless a meritorious defense is disclosed. 15 R. C. L. 735.

■ In approaching this inquiry, it must be borne in mind that the only testimony received came from appellees or their witnesses. But even this testimony, construed most favorably to the appellees, fails to disclose a meritorious defense to appellant's cause of action.

Appellees asserted in their answer a want of consideration to support the guaranty contract. They also asserted that the indebtedness upon which appellant's cause of action was predicated and for which the judgment was entered, was an indebtedness that arose prior to the execution of the guaranty contract sued on.

In support of these defenses, appellees offered the testimony of one George Massey, son of the appellee Catherine V. Massey, and brother of the other appellees, and a defendant in the law action. He was an officer of, and a stockholder in, the dealer company. He testified:

468

"At the time the inventory was taken (shortly before the guaranty contract was executed) I and the Miller people agreed upon the amount of the stock and the prices and we gave trade acceptances and afterwards paid some of them. We did not return a large amount of tires. They delivered more tires; in fact, up to around $50,000. Subsequently we returned tires, trading them in for different sizes. I do not know that we returned any tires for credit after the trade acceptances were signed. The indebtedness was reduced from $50,000 to $22,000 by the payment of $36,000 worth of trade acceptances. During our business we would send back tires and receive credit, and then some sizes were not moving very fast and we would get other tires for them. Our agreement was to send back tires and get credit. I do not know that we got credit on trade acceptances for tires returned. I do not know the total amount of the trade acceptances. The indebtedness was around $50,000. I think there was about $36,000 of trade acceptances signed after that. I do not know whether we paid some money before or after. *The original trade acceptances given by us on the transfers were all paid, and the trade acceptances in this suit were for subsequent transactions.* I think all of the trade acceptances given on the original transfer were paid.

"I am a defendant in this suit and filed an answer and joined with my mothers and sisters."

This testimony negatives the allegations of the bill respecting the state of the account. There was a consideration, and the past indebtedness had been paid. The indebtedness upon which the action at law was predicated, and for which the judgment was entered, was an indebtedness which was incurred by the dealer after appellees had executed the guaranty contract sued upon, and appears to have been substantially the amount of the judgment.

The decree is reversed, with direction to dismiss the bill.