CONTINENTAL NAT. BANK OF JACKSON COUNTY, AT KANSAS CITY, MO., et al.
v. HOLLAND BANKING CO.

No. 9673.

Circuit Court of Appeals, Eighth Circuit.
July 24, 1933.

Rehearing Denied Sept. 5, 1933.

See, also, 50 F. (2d) 19.

824

George L. Edwards, of Kansas City, Mo. (Omar E. Robinson and Albert E. Stoll, both of Kansas City, Mo., on the brief), for appellants.

H. G. Leedy, of Kansas City, Mo., and Orin Patterson, of Springfield, Mo. (Roscoe C. Patterson, of Kansas City, Mo., and Farrington & Curtis, of Springfield, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a suit in equity brought in the federal court by the appellee asking the aid of the court in the collection of a judgment obtained in the state court against the appellant, Continental National Bank.

The salient allegations of fact set out in the bill of complaint are as follows: The defendant, the Continental National Bank of Jackson County, at Kansas City, Mo., hereafter called the Continental National Bank, is a corporation organized under the National Banking Act of the United States of America and located at Kansas City, in Jackson county, in the Western district of Missouri. On the 17th day of October, 1922, the Continental National Bank ceased the transaction of business as a national bank, and on said date it entered into a contract in writing with the Continental National Bank & Trust Company, of Kansas City, Mo., whereby, in consideration of the assumption by the Continental National Bank & Trust Company of certain liabilities of the Continental National Bank, the latter caused to be transferred and delivered to said Continental National Bank & Trust Company a large portion of its assets. Thereafter, to wit, on the 2d day of January, 1923, by a vote of two-thirds of its shareholders, said Continental National Bank went into voluntary liquidation, and at said time the defendants J. F. Meade, Russell Smith, B. Haywood Hagerman, John M. Cleary, and C. W. Sheldon were named as liquidating agents for said bank, and all the remaining assets belonging to said bank were on said date delivered into the possession of said liquidating committee, composed of the defendants last named, for the purpose of liquidation, pursuant to section 5220, U. S. Revised Statutes (12 US CA § 181). The capital stock of said bank, on the 2d day of January, 1923, was $1,000,000, divided into ten thousand shares of the par value of $100 each; and on said date, said bank, according to its books, had a surplus fund in excess of 20 per cent. of its said capital stock. (The names of numerous persons are given as being stockholders of the bank on January 2, 1923; and they and their executors, administrators, heirs, and legatees are still stockholders.)

Plaintiff brings this action on its own behalf and on behalf of all other creditors of said Continental National Bank for the purpose of winding up the affairs of said national bank and to establish the existence of a trust in the assets of said national bank for the use and benefit of this plaintiff and all other creditors of said national bank, and to enforce an equitable lien and claim against such assets; and to administer said trust; that the same is also to recover from the defendants who are shareholders of said bank, and from the administrators or executors and heirs and legatees of such of said shareholders who are deceased, the amount of the individual liability of said shareholders for the debts and engagements of said bank to the extent of the amount of the stock of such bank owned by such shareholders at the par value thereof, in addition to the amount invested in such stock by said shareholders.

Plaintiff, Holland Banking Company, is a corporation organized and existing under and by virtue of the laws of the state of Missouri with its place of business at Springfield, Greene county, Mo. S. L. Cantley is the duly appointed, qualified, and acting commissioner of finance of the state of Missouri. On the 15th day of January, 1924, plaintiff, Holland Banking Company, became insolvent, closed its doors, and placed all of its property and affairs in the possession of F. C. Millspaugh, who was then the duly qualified and acting commissioner of finance of the state of Missouri. S. L. Cantley now has charge thereof for the purpose of liquidation, under the laws of the state of Missouri relating to insolvent banks.

After the failure of plaintiff bank, as herein set forth, to wit, on the 19th day of August, 1926, an action was instituted by the Holland Banking Company by S. L. Cantley, finance commissioner aforesaid, in the circuit court of Greene county, Mo., against the defendant, Continental National Bank, and one Edd L. Sanford, seeking the recovery of $100,000 and interest, on account of a conversion on and prior to October 17, 1922, by said defendant bank of funds in said amount belonging to the Holland Banking Company. Thereafter, the venue of said cause was by agreement transferred to the circuit court of Pettis county in the state of Missouri, and the cause of action as to Edd L. Sanford, one

of the defendants therein, was thereupon dismissed. Said cause was thereafter in said court duly tried, and on the 5th day of September, 1927, said court rendered judgment in favor of the plaintiff herein and against the defendant, Continental National Bank, in the sum of $97,274.85, with interest from said date at 6 per cent. per annum. The defendant banking association appealed from said judgment to the Supreme Court of the state of Missouri. Thereafter, to wit, on the 8th day of October, 1929, said Supreme Court of Missouri rendered a judgment affirming the judgment of the trial court aforesaid. 324 Mo. 1, 22 S.W.(2d) 821. Thereafter, to-wit, on the —— day of January, 1930, said defendant banking association applied to the Supreme Court of the United States for a writ of certiorari to be directed to the Supreme Court of Missouri to send up the record in said cause for review of the judgment of that court. 281 U. S. 724, 50 S. Ct. 239, 74 L. Ed. 1142. On the 7th day of March, 1930, said Supreme Court of the United States denied said writ, and the judgment herein referred to has now become final and conclusive, and binding on said banking association and all of the defendants herein. By reason of the premises, said defendant banking association was on said October 17, 1922, and has ever since been, lawfully indebted to the plaintiff bank, and is now indebted to plaintiff bank in the aforesaid sum of $97,274.85, together with interest thereon at the rate of 6 per cent. per annum from the aforesaid 5th day of September, 1927.

Plaintiff has demanded of the defendant bank and its liquidating committee the payment of said debt and judgment, but said defendants have failed, refused, and neglected to pay the same, or any part thereof.

There are not now sufficient assets belonging to said defendant bank to pay its debts. After the assets on hand have been liquidated and the amount of the same ascertained, and after the amount of its debts have likewise been determined, it will then become necessary to assess the shareholders of said bank to the amount of their stock therein at the par value thereof, in order to pay the debts due plaintiff and other creditors. The defendants who are named herein as shareholders of said bank or as the executors, administrators, heirs, or legatees of shareholders, are liable under 38 Stat. 273, § 23 (12 USCA § 64), each to the par value of the stock owned by such shareholders for such deficiency as may hereafter be determined.

The prayer is for a receiver, a winding up of the defendant bank, an ascertainment of the debts and assets of the defendant bank, an application of the assets to the payment of debts, and judgment against the stockholders of defendant bank sufficient to pay any deficiency, but not exceeding the statutory liability.

The answer of the defendants admits the obtaining of the judgment in the state court by plaintiff; but alleges: "The suit commenced by plaintiff in which he obtained said judgment was commenced to collect a bank credit or deposit for $100,000 entered on its books by the Continental Bank in favor of the Holland Bank on or about the 9th of April, 1921, pursuant to the following contract: At that time, J. L. Hine and C. E. Randall were vice-president and cashier, respectively, of the Holland Bank and J. F. Meade, president of the Continental Bank. Hine and Randall proposed to Meade to execute their note to the Continental Bank for said amount and until their note was paid the Holland Bank would keep on deposit with the Continental Bank at least $100,000, against which the Continental Bank might charge their note at any time it desired, they to pay interest on their note at the rate of 6% and the Continental Bank to pay interest on said deposit or credit to the Holland Bank at the ruling clearing house rate. Meade accepted this proposition and Hine and Randall executed and delivered their note to the Continental Bank as agreed, and the Continental Bank entered in favor of the Holland Bank a credit or deposit for $100,000 as agreed. Interest was paid thereafter as agreed and the Holland Bank thereafter, as agreed, kept a deposit of approximately $100,000 with the Continental Bank. Later on, by mutual agreement, the note of E. L. Sanford, who had become president of the Holland Bank, was substituted for the Hine and Randall note upon the same terms and conditions. Sanford paid $25,000 on his note. In October, 1922, the balance of his note remaining unpaid, the Continental Bank charged it against said deposit so remaining with it at that time amounting to approximately the balance due upon said note, or $75,000. It was to recover this balance of deposit so appropriated to the payment of the balance due upon Sanford's note that suit was commenced and the trial court entered a judgment against the Continental Bank for the exact amount of said balance of deposit."

The answer further alleges: "That at the time or shortly after the balance due upon Sanford's note was charged against the bal-

ance of said deposit or credit, Sanford reimbursed to the Holland Bank the amount thereof and which was known to and approved by the Holland Bank and the Commissioner of Finance long before the commencement of said suit, but fraudulently concealed from and unknown to the Continental Bank, its officers, agents and employees, and its liquidating committee, until long after the trial of said suit and even until after it had been submitted to the Supreme Court of Missouri."

The answer then sets out the details of the alleged payment by Sanford to the Holland Bank by the turning over by Sanford to the bank of notes of third parties in October, 1922; that Sanford was at that time solvent; that later the Holland Bank permitted Sanford to take out the said notes of third parties and substitute his own notes therefor.

The answer then sets out the putting up of certain collateral by Sanford (in September, 1923), as president of the Holland Bank in connection with an indemnity contract to meet a requirement of the commissioner of finance relative to bad paper held by the Holland Bank. The answer further alleges that in August, 1924, a contract between the commissioner of finance and Sanford covering the transfer by Sanford of certain property to the bank in settlement of certain of his obligations to the bank was made, subject to approval of the state court of Greene county, but was finally not carried out because disapproved by the court. The answer further alleges that certain of the collateral put up by Sanford was wrongfully sold by the commissioner of finance and the proceeds applied to the payment of customers' paper owing to the Holland Bank, instead of to the payment of Sanford's notes. The answer further alleges that the commissioner of finance had full knowledge of the foregoing facts, but concealed them from the Continental Bank and its officers and the liquidating committee; that none of the foregoing facts were known by the Continental Bank, its officers, or the liquidating committee until long after the trial of the case in the state court and until that case had been disposed of by the Supreme Court of Missouri; that the officers of the Holland Bank, at the time of the commencement of the suit in the state court, were under indictment or threatened with prosecution and so in personal jeopardy; that the special deputy commissioner in charge of the liquidation of the Holland Bank gave untrue statements to the representatives of the Continental Bank; that shortly after the commencement of the state court case, and before the trial thereof, the defendants sent a representative to Springfield, Mo., to inquire of the commissioner of finance, or his deputy, what happened when the Continental Bank in October, 1922, charged the balance due upon Sanford's note against the balance of the deposit of the Holland Bank; that this representative made this inquiry of J. E. Cahill, special deputy commissioner in charge of the liquidation of the Holland Bank from the 1st of June, 1924, on down to the present time; that in response to this inquiry, Cahill advised the representative of the defendants that the only thing that was done was that Sanford directed to balance such debit upon the books of the Holland Bank, that the amount thereof be charged to the paying teller, and that nothing further was done, and that the books and records of the Holland Bank did not reveal anything else indicative of what happened or what was done by Sanford, or by the Holland Bank to take care of this charge made at that time by the Continental Bank against the Holland Bank; that, at the very time that Cahill made this statement to the representative of the Continental Bank, he well knew all the facts above mentioned, and that his statement to the representative of the Continental Bank was untrue and done for the purpose of misleading and deceiving him as to the real facts; and that, relying upon the statement of Cahill, the defendants made no further investigation as to what occurred at the time mentioned, or what was done at that time by Sanford or by the Holland Bank to take care of this charge until long after the trial and disposition of the state cause; that the mental condition of Sanford was such that the Continental Bank could not get from him the real facts as to the various transactions already mentioned.

The answer further alleges that, by reason of the foregoing facts, it would be inequitable and unconscionable to permit the Holland Bank to contend that the debt of Sanford to the Holland Bank has not been paid and satisfied.

The answer prays that the court deny to plaintiff any aid or relief in the enforcement of the judgment of the state court.

Prior to the trial of the case at bar upon the merits, a receiver of the Continental National Bank was appointed by the trial court [(D. C.) 43 F.(2d) 640], and the order for a receiver was affirmed by this court [50 F. (2d) 19].

Upon the issues formed by the pleadings, the case was tried, and the trial court made findings of fact and conclusions of law in favor of plaintiff, which are set out in the margin.[1]

A decree was, accordingly, entered ordering a sale of the property owned by the defendant bank. Jurisdiction was reserved for the purpose of determining the liability of shareholders, and making such further orders as might be necessary.

The present appeal followed.

### The Force and Effect of the Judgment Obtained in the State Court.

Counsel for appellants in their brief state: "In the very beginning let us say that we are not asking this court to review as an

---

[1] "Findings of Fact.

"1. That the defendant, The Continental National Bank of Jackson County, at Kansas City, Missouri, is a corporation organized under the National Banking Act of the United States of America, and located at Kansas City, in Jackson County, in the Western District of Missouri.

"2. That on January 2, 1923, by a vote of two-thirds of its shareholders, said Continental National Bank went into voluntary liquidation, and has ever since been and is now in voluntary liquidation.

"3. That the defendants, J. F. Meade and W. P. Hemphill, are the Liquidating Agents of said bank.

"4. That the capital stock of said Continental National Bank at the time it was voted into voluntary liquidation was One Million Dollars, divided into ten thousand shares of the par value of One Hundred Dollars each; and that said bank at said time had a surplus fund in excess of twenty per cent (20%) of its said capital stock.

"5. That the Holland Banking Company is a corporation organized under the laws of the State of Missouri; that on January 15, 1924, said Holland Banking Company suspended business; that thereupon said corporation and its property and affairs were placed in charge of the Commissioner of Finance of the State of Missouri for liquidation, and that the Commissioner of Finance of the State of Missouri has ever since been and is now in charge of said corporation, its property and affairs.

"6. That a judgment was entered in the Circuit Court of Pettis County, Missouri, in favor of the plaintiff and against defendant, Continental National Bank of Jackson County, at Kansas City, Missouri, on September 5, 1927, in the sum of Ninety-seven Thousand Two Hundred Seventy-four and 85/100 Dollars ($97,274.85), with interest from said date at the rate of six per cent (6%) per annum; that the defendant, Continental National Bank appealed from said judgment to the Supreme Court of Missouri, and that thereafter, to-wit, on the 8th day of October, 1929, said Supreme Court of Missouri entered a judgment affirming the aforesaid judgment of said Circuit Court of Pettis County, Missouri; that thereafter, said Continental National Bank applied to the Supreme Court of the United States for a writ of certiorari directed to the Supreme Court of Missouri to obtain a review of the aforesaid judgment, and that on March 7, 1930, the Supreme Court of the United States denied said writ.

"7. That no part of the aforesaid judgment has at any time been paid.

"8. That all of the property of said Continental National Bank has been disposed of, save and except the following property which is now in the possession of William H. Gillespie, heretofore in this cause appointed Receiver of said Continental National Bank, to-wit: [Here follows a list of property in four parcels].

"9. That after said Continental National Bank went into voluntary liquidation, and prior to the appointment of the Receiver herein, the liquidating Agents of said bank paid to its stockholders, as liquidating dividends on the stock of said bank owned by them, the aggregate sum of Four Hundred Thirty Thousand Dollars, ($430,000.00).

"10. That the aforesaid judgment in favor of plaintiff and against defendant, Continental National Bank, was based on the wrongful act of said Continental National Bank, as found and held by the aforesaid courts of the State of Missouri, in charg-

ing off and applying the sum of Seventy-five Thousand Two Hundred Twelve Dollars and fifty-five cents, ($75,212.55), which stood as a deposit credit in favor of the Holland Banking Company on the books of the said Continental National Bank, on the personal and individual indebtedness of E. L. Sanford, President of said Holland Banking Company, evidenced by his promissory note then held by said Continental National Bank, on which there was then owing an amount equal to the aforesaid deposit credit of $75,212.55.

"11. That subsequent to the time that the aforesaid deposit credit in favor of said Holland Banking Company was charged off and applied by said Continental National Bank on the aforesaid note of E. L. Sanford, said E. L. Sanford caused the books of said Holland Banking Company to show that the assets of said bank had not been diminished by reason of said act on the part of said Continental National Bank (1) by causing certain promissory notes aggregating the principal sum of Thirty-six Thousand Five Hundred Dollars ($36,500.00), then shown by the books of said bank to be a part of its assets, but which were then paid, to be thereafter shown by its said books as a part of its assets, under an agreement purporting to be made on behalf of the maker of such notes, and (2) by placing in the assets of said bank, accommodation notes obtained by said Sanford at the time, aggregating the principal sum of Twenty-eight Thousand Seven Hundred Dollars ($28,700.00), and (3) by causing a charge to be carried against the paying teller of said bank for the amount of the balance of said $75,212.55 then remaining unprovided for, which charge against said paying teller was later removed in some manner not determinable from the evidence.

"12. That the aforesaid notes so carried as assets on the books of said Holland Banking Company were thereafter renewed, but the officers, directors, and stockholders of said Holland Banking Company, other than said Sanford, had no knowledge of the purpose for which said notes, or the renewals thereof, were so carried, or that the same had not been acquired by said Holland Banking Company in the usual, ordinary and regular conduct of its business.

"13. That there is no evidence that the aforesaid notes, or any of them, were collectible.

"14. That immediately prior to the time said Holland Banking Company suspended business, said E. L. Sanford removed all of the aforesaid notes from the assets of said bank, together with other notes then carried as a part of its assets, and in lieu of the notes so removed, placed his own personal notes in said assets for the aggregate principal sum of said notes so removed; that none of said notes so removed have ever been returned to said Holland Banking Company, or the Commissioner of Finance of Missouri, and that none of said notes executed by said Sanford, or any part of the same, have ever been paid.

"15. That on or about September 15, 1923, said E. L. Sanford and one E. N. Ferguson, who was Chairman of the Board of Directors of said Holland Banking Company, entered into an agreement, in the form of bond of indemnity, to indemnify said Holland Banking Company from any loss it might sustain on certain notes then constituting a part of its assets, which the Commissioner of Finance, as result of an examination of said bank, had required said bank to immediately collect, charge off its

appellate court the conclusions reached by the trial and Supreme Court of the State of Missouri."

Yet they quote certain of the findings of the state trial court, and then say: "It is difficult to understand in view thereof how the trial and Supreme Court of Missouri could have reached the conclusion arrived at in the majority opinion of the Supreme Court. On these admitted facts, according to settled principles of law and good morals, recognized and applied by the courts of all civilized nations from time immemorial, the plaintiff had no cause of action. * * * The conclusion reached by the trial court and by the majority opinion of the Supreme Court is utterly indefensible and plaintiff's judgment, therefore, rests upon a miscarriage of justice and not a cause of action. * * * The conclusion reached in the majority opin-

books or properly secure; that to secure his obligation under said bond of indemnity, said E. L. Sanford deposited with said Holland Banking Company twelve hundred fifty (1250) shares of the capital stock of the Herman-Sanford Company, a corporation, and under said bond of indemnity said shares of stock were held as security by said Holland Banking Company at the time of its suspension.

"16. That at the time of the suspension of said Holland Banking Company, said E. L. Sanford was indebted to said bank in a sum in excess of Five Hundred Thousand Dollars ($500,000.00); that subsequent to said suspension and on August 15, 1924, a contract was entered into between the Commissioner of Finance of the State of Missouri and said E. L. Sanford, under which it was agreed that said E. L. Sanford should transfer and convey to said Holland Banking Company certain shares of stock and certain real estate owned by him, and that a Committee, named in said contract should fix the value of all of said property, and fix the terms and conditions for the transfer and conveyance of the same; that all of the stock mentioned in said contract has been pledged to said Holland Banking Company by said Sanford to secure specific indebtedness owing by him to said bank prior to the time of its suspension, with the exception of certain stock which was pledged to secure indebtedness of said Sanford to another creditor; that included in the stock mentioned in said contract was the 1250 shares of the stock of Herman-Sanford Company held by said Holland Banking Company as security under the aforesaid bond of indemnity executed by said Sanford and said E. N. Ferguson on or about September 15, 1923; that said contract was made expressly subject to the approval of the Circuit Court of Greene County, Missouri, and thereafter, said contract was disapproved by said court and for naught held; that thereafter all of the stocks referred to in said contract which had been previously pledged to secure indebtedness of said Sanford to said Holland Banking Company, including the aforesaid stock pledged to secure said bond of indemnity, were sold by the Commissioner of Finance, with the approval and consent of said Sanford, and the proceeds of the same applied on the indebtedness owing by him to said Holland Banking Company, for which .said stocks were pledged as security; that the proceeds of the sale of the aforesaid 1250 shares of the stock of the Herman-Sanford Company pledged to secure the aforesaid bond of indemnity were applied toward the satisfaction of the liability of said Sanford under said bond of indemnity; that the aforesaid stock pledged to secure indebtedness of said Sanford to his aforesaid other creditor was sold by such creditor, with the approval and consent of said Sanford, and after applying such part of the proceeds of such sale as was necessary to extinguish the indebtedness owing such creditor, the remainder of such proceeds were paid by such creditor to the Commissioner of Finance, and the same were applied on indebtedness owing to said Holland Banking Company, in accordance with the directions of said Sanford; that no part of the proceeds of any of the said sales was applied on the aforesaid notes of said Sanford placed by him in the assets of the Holland Banking Company immediately prior to the time of its suspension in substitution for notes then removed by

him; that the real estate referred to in the aforesaid contract between the Commissioner of Finance and said Sanford was never conveyed to said Commissioner of Finance, or said Holland Banking Company, and neither of them received the same.

"17. That after the commencement of the suit by plaintiff which resulted in the aforesaid judgment in its favor and against the defendant, Continental National Bank, in the Circuit Court of Pettis County, Missouri, and prior to the trial thereof plaintiff on various occasions exhibited all of its books and records to said Continental National Bank and its Liquidating Agents for their examination and inspection, and officers, agents and representatives of said Continental National Bank and its Liquidating Agents made examinations and inspections of the same; that neither the Holland Banking Company nor the Commissioner of Finance, nor any of his deputies or employees, in any way concealed or misrepresented any of the aforesaid facts.

"18. That prior to the trial of the suit which resulted in the aforesaid judgment in favor of plaintiff and against defendant, Continental National Bank, said Continental National Bank, its officers and agents, and said Liquidating Agents interviewed said E. L. Sanford; that Sanford was willing to assist said Continental National Bank and its said Liquidating Agents in the defense of said suit; that such information as said Sanford had with reference to the foregoing facts were equally as available to said Continental National Bank and its Liquidating Agents as to the Commissioner of Finance, his deputies and employees.

"Conclusions of Law.

"1. That the Court has jurisdiction of the parties to this suit and of the subject matter thereof.

"2. That payment has not been shown of the loss suffered by the Holland Banking Company, as found by the Circuit Court of Pettis County, Missouri, and the Supreme Court of Missouri, which this court can say would have constituted a defense to the suit of plaintiff against the Continental National Bank tried in the Circuit Court of Pettis County, Missouri.

"3. That the Continental National Bank and its Liquidating Agents were not prevented from exhibiting the defense of payment in the state courts, if any such defense existed, by any fraud on the part of the plaintiff.

"4. That the Continental National Bank and its Liquidating Agents were not diligent in presenting the defense of payment in the suit in the state courts, if any such defense existed.

"5. That the judgment obtained by plaintiff in the Circuit Court of Pettis County, Missouri, and affirmed by the Supreme Court of Missouri, is valid and enforceable, and that plaintiff is entitled to the enforcement of the same in this proceeding.

"6. That the defendants, The Continental National Bank of Jackson County and its Liquidating Agents are not entitled to the relief prayed for in their answer and cross bill filed herein, or any part of the same.

"7. That the answer and cross bill of said Continental National Bank of Jackson County and its Liquidating Agents is without equity and that the same should accordingly be and is hereby dismissed."

ion is out of harmony with the law of the land as declared by the Supreme Court of Missouri until its divided opinion in the state case, and by every other court from time immemorial."

■ Apparently counsel have misapprehended the force and effect of the state court judgment. Neither the United States District Court nor this court can by way of review or otherwise allow appellants to relitigate issues which were tried and determined against them in the state courts. Neither the findings of fact in the state court nor the sufficiency of the evidence adduced in support thereof are here open to question.

In Southern Pacific Railroad Co. v. United States, 168 U. S. 1, page 48, 18 S. Ct. 18, 27, 42 L. Ed. 355, the court said:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

"Among the cases in this court that illustrate the general rule are Hopkins v. Lee, 6 Wheat. 109, 113 [5 L. Ed. 218]; Smith v. Kernochen, 7 How. 198, 216 [12 L. Ed. 666]; Thompson v. Roberts, 24 How. 233, 240 [16 L. Ed. 648]; Washington, Alexandria & Georgetown Steam Packet Co. v. Sickles, 24 How. 333, 340, 341, 343 [16 L. Ed. 650]; Russell v. Place, 94 U. S. 606, 608 [24 L. Ed. 214]; Cromwell v. Sac County, 94 U. S. 351 [24 L. Ed. 195]; Campbell v. Rankin, 99 U. S. 261 [25 L. Ed. 435]; Mason Lumber Co. v. Buchtel, 101 U. S. 638 [25 L. Ed. 1073]; Bissell v. Spring Valley Township, 124 U. S. 225, 230, 8 S. Ct. 495 [31 L. Ed. 411]; and

Johnson Co. v. Wharton, 152 U. S. 252, 253, 14 S. Ct. 608 [38 L. Ed. 429]."

See, also, United States v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262; Oklahoma v. Texas, 256 U. S. 70, 41 S. Ct. 420, 65 L. Ed. 831.

The rule thus stated has been uniformly followed.

■ And the rule applies as well to defenses which might have been set up in the former suit as to those which were actually litigated. Grubb v. Public Utilities Comm., 281 U. S. 470, 479, 50 S. Ct. 374, 74 L. Ed. 972, and cases cited.

■ It may be noted in passing that equitable defenses are allowable in law actions in Missouri (section 777, Missouri Revised Statutes, 1929 (Mo. St. Ann. § 777); also that a judgment of a state court of competent jurisdiction, when used as the basis of a claim in a court of the United States, is as conclusive as if the judgment had been rendered in a court of the United States. Scotland County v. Hill, 132 U. S. 107, 10 S. Ct. 26, 33 L. Ed. 261; Grubb v. Public Utilities Comm., supra.

Relief Against Enforcement of Judgment.

■ But while one court will not re-examine defenses and causes of action once presented, considered, and determined by another court of competent jurisdiction, yet, under certain conditions, a court of equity may restrain the enforcement of a judgment obtained in another court, and this rule applies both to the courts of the United States and to the state courts.

■ Generally speaking, the facts which condition the granting of relief by a court of equity against the enforcement of a judgment are: First, that the party seeking the relief had a good defense against the cause of action on which the judgment was entered; second, that he was prevented by fraud, concealment, accident, mistake, or the like from presenting such defense; and, third, that he has been free from negligence in failing to avail himself of the defense.

In Knox County v. Harshman, 133 U. S. 152, 10 S. Ct. 257, 258, 33 L. Ed. 586, the court said: "A court of equity does not interfere with judgments at law, unless the complainant has an equitable defense of which he could not avail himself at law, or had a good defense at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents."

In the case of Smith v. Apple, 6 F.(2d) 559, page 563, this court, speaking by Judge Stone, said: " * * * When a party has a defense which he could have interposed, and is not prevented from so doing by fraud, accident or mistake, he cannot reserve that defense to some other time or forum and thus split up litigation. If he suffers through his negligent failure to interpose the defense at the proper time and in the proper court, it is from his own fault and he cannot ask relief therefrom in a court of equity."

The rule has been recognized in a multitude of cases, among them: Hendrickson v. Hinckley, 17 How. 443, 15 L. Ed. 123; Toledo Scale Company v. Computing Scale Co., 261 U. S. 399, 43 S. Ct. 458, 67 L. Ed. 719; David A. Manville & Co. v. Francis Oil & Ref. Co., 20 F.(2d) 473 (C. C. A. 8); Jenner v. Murray (C. C. A.) 32 F.(2d) 625; Riverside Oil & Ref. Co. v. Dudley, 33 F. (2d) 749 (C. C. A. 8); Miller Rubber Co. v. Massey (C. C. A.) 36 F.(2d) 466.

█ It is also generally held that the fraud complained of must be extrinsic to the issues which were determined in the suit resulting in the judgment.

Freeman on Judgments (5th Ed.), p. 2568, states the rule as follows: "The rule that fraud, to be a ground for relief, must be extrinsic or collateral to the matter tried in the first action, is almost universally acquiesced in. It is merely an application of the general principle that equity will not interfere simply to give a second opportunity to relitigate that which has already been fully litigated. Extrinsic fraud has been defined to be 'actual fraud, such that there is on the part of the person chargeable with it malus animus, the mala mens, putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him.' Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself but relates to the manner in which it is procured."

In reference to the rule thus stated, this court in Hanna v. Brictson Mfg. Co., 62 F. (2d) 139, 148, speaking by Judge John B. Sanborn, said: "So much has been written on the subject of the right of a court of equity to set aside or enjoin the enforcement of unconscionable judgments or decrees for what has been termed 'extrinsic fraud,' and the cases upon that subject have been so often reviewed by this and other courts, that it would be useless once more to enter into an extended discussion of that subject"—citing a large number of cases.

### The Omitted Defense.

The main defense which the defendant Continental National Bank sets up in the case at bar against enforcement of the state court judgment is payment. This defense is set up in a twofold manner: First, by alleging facts which it is claimed constituted a satisfaction and discharge of any obligation of Sanford to the Holland Bank growing out of the charging of Sanford's note by the Continental National Bank against the credit of the Holland Bank, which facts occurred shortly after that transaction; second, by alleging facts which it is claimed occurred considerably later, but which, in equity, should be held to be a discharge of said obligation of Sanford to the Holland Bank, or at least would constitute an estoppel against the Holland Bank to deny such discharge.

The Continental National Bank contends that this defense of payment is now available because it was prevented from setting it up in the state court action by reason of fraud and concealment on the part of the Holland Bank, its officers, and the deputy commissioner of finance in charge of the Holland Bank.

The trial court found against the defendant Continental National Bank on the question of payment by Sanford to the Holland Bank and discharge by that bank of his obligation to it growing out of the charging by the Continental National Bank of Sanford's note to the credit balance of the Holland Bank; found that the defendant Continental National Bank was not prevented by fraud from presenting in the state court suit the defense of payment, if any such defense existed; found that the Continental National Bank was not diligent in presenting the defense of payment in the state court suit, if any such defense existed; found that the answer of the Continental National Bank, in the case at bar, was without equity.

### The Question of Fraud.

█ The existence of fraud on the part of the Holland Bank or its officers or the deputy commissioner of finance, which prevented the defendant bank from presenting its alleged defense in the state court, is an indispensable prerequisite to defendant bank's success in the case at bar. Fraud must be proved by clear and convincing evidence.

What does the present record show?

█ The wrongful charging of the Sanford note by the defendant bank to the credit ac-

count of the Holland Bank occurred about October 17, 1922. About the same date, the defendant Continental Bank ceased to do business. In January, 1923, said bank voluntarily went into the hands of a liquidating committee. About January 15, 1924, the Holland Bank closed its doors and was placed in the hands of the state commissioner of finance. In August, 1926, the commissioner of finance brought suit in the state court based on the wrongful conversion of the defendant Continental Bank, which occurred in October, 1922. The case was tried in the state court in September, 1927. Judgment was affirmed by the state Supreme Court in October, 1929. Rehearing was denied in November, 1929.

The facts relied on by the defendant bank as constituting payment by Sanford of his obligation to the Holland Bank took place in the fall of 1922 and following months. The facts relied upon by the defendant bank as being equivalent in equity to a payment of Sanford's obligation to the Holland Bank took place in the fall of 1923 and the summer of 1924.

It is apparent, therefore, that the facts relied upon by defendant Continental Bank as constituting payment, as a matter of law, by Sanford to the Holland Bank were in existence from three to four years prior to the trial of the action in the state court; and the facts relied upon as sufficient in equity to constitute such payment were in existence about two years prior to said trial.

As stated, the suit in the state court by the commissioner of finance was commenced in August, 1926.

The third amended answer of the defendant Continental National Bank, in the suit in the state court, was filed February 23, 1927. Although it set up various defenses, it did not set up payment by Sanford to the Holland Bank in discharge of any obligation on his part to that bank.

The trial of the case in the state court commenced May 24, 1927.

In the early part of 1927, Meade and Williams, officers of the Continental Bank, went to Springfield, Mo., the place of business of the Holland Bank, to investigate.

Mr. Williams testified as follows relative to the purpose of the trips and what was learned:

"I accompanied Mr. Meade on his trips to Springfield, Missouri, to investigate the condition of the Holland Bank with a view to the defense of the state case. Our first trip was in the early part of 1927 and our second trip within thirty or sixty days thereafter. When we arrived in Springfield on our first trip we went to the office of Judge Farrington, of counsel for plaintiff. We advised him of our mission and he introduced us to Mr. Cahill. Our first effort was to find out from Mr. Cahill and the records of the Holland Bank how the $100,000 credit or deposit entered on the books of the Continental Bank in favor of the Holland Bank in April, 1921, was reflected on the books of the Holland Bank. We found that this item was entered on the books of the Holland Bank as a charge against the Continental Bank and we found that against this charge some forty odd thousand dollars of paper had been taken out of the Holland Bank, which consisted of several items but which we were unable to definitely trace, and the balance had been set up in a special account in favor of E. L. Sanford. We asked Mr. Cahill what notes had been taken out of the Holland Bank and why, but he said he did not know.

"* * * We then inquired what had been done when the Continental Bank in October, 1922, charged the balance due on Sanford's note against the balance of deposit of the Holland Bank, amounting to some $75,000. We wanted to see what entries had been made on the books of the Holland Bank. We found that this charge had been handled by the general bookkeeper in two items, one of $25,000 and one of fifty thousand two hundred odd dollars, charged against the paying teller. The total of these charges was $75,212.55. We asked to see the paying teller's blotter, from which we tried to trace out of the paying teller's window these debits but there was no complete record kept of cash items in the paying teller's cage, and no way we could find out what took the place of these debit items. We tried to find this out from Mr. Cahill and from Mr. Nelson, the note teller of the Holland Bank and at that time in the employ of the Commissioner of Finance. They told us that they had tried to trace these items and were unable to do so and were unable to give us any information on the subject. Neither Mr. Cahill nor Mr. Nelson directed our attention to the fact that these debits had been taken care of by third party notes delivered by Sanford to the Holland Bank. I first learned this in the early part of 1930, I think from Mr. Omar Robinson, one of the attorneys in the state case and in this case. * * *

"Our second trip was made within thirty or sixty days after our first and the main ob-

ject of our second trip was to see and confer with Mr. Sanford. * * * While he expressed a willingness to do everything he could to help us, he gave us no definite information, but spent most of his time talking of the criminal cases directed against him. * * *

"When we went to Springfield to see Mr. Sanford, his mental and physical condition was such that he could give no coherent story of the transactions we inquired about. I knew when I went to see Mr. Sanford that the $75,212.55 had been charged against the deposit of the Holland Bank and about this charge having been carried in the Holland Bank as a charge against the paying teller. As a banker I knew that the Holland Bank should have received on the dates of those charges cash or cash items. The entry of the two charges aggregating that amount on the books of the Holland Bank were necessary as a corresponding entry to the charges made on the books of the Continental Bank.

"We asked Mr. Cahill what he knew about this transaction and he told us that he could not trace it. We looked at the books which Mr. Cahill showed us and we could not trace it either. It simply could not be traced by aid of the books.

" * * * We saw the cash item slips carried in the paying teller's window and we were furnished any books or records we asked Mr. Cahill for."

The testimony of Mr. Meade, although not so definite and clear as that of Mr. Williams, is along the same general line.

It is apparent from the record that the investigation of Meade and Williams was directed toward facts throwing light upon the alleged contract between the Continental Bank and the Holland Bank, as set up in the answer of the Continental Bank, rather than toward facts tending to show payment by Sanford of his obligation to the Holland Bank, of which no mention was made in the answer. Apparently the possibility of a defense by the Continental Bank on the ground of payment by Sanford to the Holland Bank was not in the minds of any of the persons connected with the Continental Bank until suggestion of it was made by one of the attorneys of the Continental Bank after the trial in the state court, but before the case was finally disposed of by the Supreme Court of Missouri.

The facts which the Continental Bank sets up in its answer to the present suit as constituting legal payment by Sanford to the Holland Bank were well known to numerous persons at the time of the visits of Meade and Williams to investigate the records of the Holland Bank. Sanford, Randall, Ferguson, and Bushnell were acquainted with those facts.

And the facts which the Continental Bank sets up in its answer in the present suit as being equivalent in equity to a payment by Sanford to the Holland Bank were known by still more persons. Sanford, Ferguson, McDavid, Millspaugh, Francis, Nelson, Todd, Bushnell, McDaniel, Cahill, Baldwin, Meyer, Woodruff, and McCanse were cognizant of some or all of those facts.

Sanford, it is true, was under indictment at the time of the trial in the state court; but, even so, he was in attendance at the trial and ready to testify if called. In fact, Sanford furnished the information which was the foundation for the suggestion of the attorney of the Continental Bank of the defense of payment by Sanford to the Holland Bank; and this information was furnished before the close of the proceedings in the Supreme Court of Missouri.

It was only when at this later time an attorney for the Continental Bank suggested payment as a defense that the officers of that bank found that they had not investigated the facts bearing on such a defense.

Thereafter Mr. Meade, in July or August, 1928, went to Springfield, saw Mr. Sanford, and learned the facts upon which the Continental Bank now bases its defense of payment by Sanford to the Holland Bank. There had been no concealment of them and no fraudulent prevention of the Continental Bank's learning the facts long prior to this time, so far as the record shows.

Mr. Sanford did not testify at the trial in the state court; and the reason why he did not testify at that trial was given by himself at the trial of the present case:

"Q. You were subpœnaed as a witness in the Sedalia trial, weren't you? A. I was.

"Q. Subpœnaed by the defendant, The Continental National Bank? A. Yes.

"Q. And you were there during and throughout the trial? A. Yes.

"Q. You were in conference with Mr. Jost and Mr. Meade and those people, as you were probably with our crowd at times? A. Yes, with all of them, both sides.

"Q. You were there as a witness and we were all from the same place and interested in the same thing? A. Yes.

"Q. You talked to them? A. Yes.

"Q. You talked to Mr. Meade and Mr. Jost? A. Yes.

"Q. And you told them that it was your personal obligation, that you owed the Continental National Bank, didn't you? A. I believe—no, I didn't have to testify.

"Q. I say, you told them that? A. Yes.

"Q. When they asked you about it? A. I did.

"Q. And they contended that it wasn't your personal obligation but merely an accommodation to the Holland Banking Company, and you told them that wasn't true? A. Well, I told them what I thought.

"Q. You told them it was your personal— A. (Interrupting) The way I had always considered it.

"Q. And they didn't put you on the witness stand? A. No. * * *

"Q. And you are positive that, prior to the trial, Mr. Meade, the president of that bank, and one of the liquidators, and Mr. Joe Williams, who was a stockholder and had been an officer in The Continental National Bank, were down to talk over this situation with you? A. Well, I don't know what they stated to me, they were down to get records or information somewhere.

"Q. Get information? A. And they talked to me about the case.

"Q. They talked to you about the facts of the case? A. Yes.

"Q. And you told them then that you understood it, you were simply assuming a personal liability of Hine and Randall that they owed this bank when you bought the stock back? A. I did."

Sanford's statement of the facts at the time of the trial of the state court case and prior thereto was not in harmony with the defenses already set up in its answer in the state court case by the Continental Bank, and, accordingly, Sanford was not called upon to testify.

Furthermore, some of the facts which the Continental Bank now relies upon as constituting payment by Sanford to the Holland Bank were set forth in written instruments; and these were accessible either in the Holland Bank or in the office of the commissioner of finance, or in the office of the clerk of court of Greene county.

There was an attempt, however, by the Continental Bank to inject the defense of payment by Sanford into the state court case prior to the final disposition of the case by the Supreme Court of Missouri. In the re-

ply brief of the Continental Bank to the supplemental brief of plaintiff, this proposed defense was mentioned, based upon an affidavit of Meade that Sanford had told him of such payment. The date of the Meade affidavit is May 11, 1929. It was not claimed that fraud had prevented setting up the defense sooner.

A similar attempt was made to inject the defense of payment into the state court suit on the motion for rehearing in the Supreme Court of Missouri. This also was based upon the Meade affidavit. There was no claim of fraud or concealment made at that time. The motion was overruled.

The affidavit of Meade does not show the date when he first learned that Sanford, by the injection of third party notes into the Holland Bank, had increased the assets of that bank in October, 1922, to offset the charge made by the Continental Bank of the Sanford note against the credit of the Holland Bank. However, on cross-examination, Meade disclosed that he got some information along this line on one of his visits to the Holland Bank prior to the trial of the suit in the state court.

Meade testified as follows:

"Q. So that when this charge was made showing that the Holland Banking Company had $75,000.00 less up here in the Continental Bank, in order that their totals would not drop they had to put some other asset in the bank equal to the $75,000.00 that the Continental took out, didn't they? A. Yes, sir.

"Q. Now you say that they showed that new asset going in as an asset in the hands of the paying teller? A. Yes, sir.

"Q. Might have been cash, the paying teller handles only cash and those items that are considered as cash, doesn't he? A. Well, that is the theory.

"Q. Yes, so that when you went to the Holland books to investigate this charge you found, not that any liability was wiped out lowering the totals but you found that an asset theretofore shown as carried with your bank, The Continental, had been wiped out and in lieu of that the paying teller, the cash in the bank had been raised by $75,000.00 didn't you? A. Yes, sir."

And the testimony of Sanford tends to show that Meade's visits to him at Springfield were not barren of information.

Sanford testified:

"Q. And I say, you discussed the history of the transaction, so far as you knew, when you were up there as a witness, subpoenaed by them to be a witness, while you were in

Sedalia? A. Well, I wouldn't say whether in Sedalia, but they had done that before.

"Q. They had done that before; they had come down here and had talked to you about it? A. Yes.

"Q. You had discussed the facts of that case fully with them? A. Yes.

"Q. Before that trial? A. Yes.

"Q. And had gone over it with them? A. Yes.

"Q. Probably once or twice? A. Well—

"Q. You know, once? A. Yes."

Mr. Meade testified that it was impossible to "get Sanford down to specific things," but Meade also testified:

"Q. And as you say you had learned that there had been a charge of $75,000.00 to the paying teller to off-set the charge that the Continental Bank had made on October 17th? A. Yes, sir.

"Q. You knew that then? A. Yes, I think we knew that.

"Q. And you went to Sanford? A. Yes, sir.

"Q. Did you ask Mr. Sanford to tell you about that charge? A. Well, if I did I did not get any response to it.

"Q. You were interested in it as a banker, weren't you? A. That is not the phase of the case we were talking to Sanford about specially, we were trying to get anything we could, but Sanford would not talk to us about his relations, his individual affairs with the bank.

"Q. But you were interested in that charge? A. Yes, but I was more interested in the original history of the case and the basis on which this loan was taken over and substituted for his note."

The fact of the matter appears to be that the alleged payment or reimbursement by Sanford to the Holland Bank was not fully or carefully investigated until additional counsel for the Continental Bank had called to Meade's attention the importance of such investigation as a basis for a possible defense.

Certain matters, however, in the record stand unchallenged: (1) That the main facts now relied upon by the Continental Bank as constituting the defense of payment by Sanford were learned by the Continental Bank prior to the time when the case in the state Supreme Court was disposed of; (2) that those facts were presented to the state Supreme Court both before its final decision and again upon motion for rehearing; (3)

that at no time was claim made to that court that the Continental Bank had been prevented by fraud or concealment from presenting a defense of payment.

The facts which the Continental Bank now claims were concealed from it by the Holland Bank or by some one connected with it or by the commissioner of finance are listed by said Continental Bank as follows:

1. Facts relating to the notes of third parties delivered to the Holland Bank shortly after the time of the charge by the Continental Bank of the Sanford note against the credit of the Holland Bank.

2. Withdrawal of these third party notes and substitution of Sanford's notes in their place.

3. Giving of the indemnity bond and collateral by Sanford and Ferguson to the Holland Bank at the demand of the commissioner of finance in the fall of 1923.

4. The incompleted settlement agreement between Sanford and Cahill as commissioner of finance in the summer of 1924.

5. Sale by the commissioner of finance of the collateral which had been put up by Sanford with the Holland Bank.

The facts relating to these various matters were not, however, fraudulently concealed, as charged by the Continental Bank. This is shown clearly by the record in the present case. Those facts were known—some of them by various parties, some of them by various other parties, as above stated—perhaps not all of them by any one party, except Sanford.

Documentary evidence covered some of the facts, and this documentary evidence was accessible to any one interested.

Whether all of the facts relating to the above-mentioned matters were known by the Continental Bank prior to the state court suit may be seriously doubted, but that is not of vital importance. The facts were discoverable by investigation; the sources of information were known and were open; but the investigation by the Continental Bank prior to the state court suit was not made with the discovery of such facts as its objective, for the reason that the theory of the possible defense of payment was not yet outlined. It was only after the trial in the state court and during the pendency of the case in the Supreme Court of Missouri that one of the counsel for the Continental Bank who had not been present at the trial, on reading the record and the briefs, shrewdly suggested the possibility of payment as a defense. Aft-

er the suggestion was made, investigation of the pertinent facts was apparently not difficult.

The situation thus disclosed by the record falls far short of fraud and concealment on the part of the Holland Bank or those connected with it, or on the part of the commissioner of finance relative to the facts mentioned.

It is futile for the Continental Bank, in the face of this record, to now contend that it was prevented by fraud or concealment from getting the facts which they now assert show payment by Sanford to the Holland Bank. There is no substantial evidence in the record that supports such a contention. The books and records of the bank were thrown open to Meade and Williams. Mr. Cahill and the officers of the Holland Bank furnished what information they had. The evidence does not establish the allegation that any one gave false information; or that any one concealed information.

■ The law applicable to the situation is well stated in Vance v. Burbank, 101 U. S. 514, page 519, 25 L. Ed. 929, as follows: "It has also been settled that the fraud in respect to which relief will be granted * * * must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully. * * * "

In Miller Rubber Co. v. Massey (C. C. A.) 36 F.(2d) 466, 467, the court said: "No case has been cited to us where relief was granted without a showing that the successful party participated in, or connived at, the misconduct which led the defeated party to neglect or ignore one or more of its defenses." See, also, United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; United States v. Atkins, 260 U. S. 220, 43 S. Ct. 78, 67 L. Ed. 224, affirming 268 F. 923 (C. C. A. 8); Beers v. Denver & R. G. W. R. Co., 286 F. 886 (C. C. A. 8); Chicago, R. I. & P. R. Co. v. Callicotte (C. C. A. 8) 267 F. 799, 16 A. L. R. 386.

What we have said disposes of the present suit. We do not wish it to be understood, however, that we consider the evidence introduced by the Continental Bank sufficient to establish the defense of payment. On the contrary, we concur in the finding of the trial court that the evidence offered was insufficient to establish such a defense. We have considered it unnecessary to discuss this question, however, in view of our holding on the question of fraud.

The decree is affirmed.