**REALTY ACCEPTANCE CORPORATION
v. MONTGOMERY.**
No. 956.

District Court, D. Delaware.
April 9, 1934.

Charles F. Curley, of Wilmington, Del., and R. Randolph Hicks, of New York City, for plaintiff.

Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., and Thomas J. Crawford, of New York City, for defendant.

NIELDS, District Judge.

Plaintiff brought this bill in equity to enjoin defendant from enforcing a judgment of $80,500, in any amount in excess of $14,-918.13; in effect, to reduce the judgment to $14,918.13. The judgment had been recovered by defendant against plaintiff on May 1, 1929, in an action at law in this court for breach of a salary contract. The complete story of the action at law will be found in Realty Acceptance Corporation v. Montgomery (C. C. A.) 51 F.(2d) 636; Montgomery v. Realty Acceptance Corporation (C. C. A.) 51 F.(2d) 642; Realty Acceptance Corporation v. Montgomery, 284 U. S. 547, 52 S. Ct. 215, 76 L. Ed. 476. The ground for asking injunctive relief in the bill was the documentary proof, obtained by plaintiff after the expiration of the term of court when the judgment was recovered, of large additional earnings on the part of defendant diminishing damages arising from the breach of the salary contract and the incorrect testimony given by defendant respecting his earnings while under cross-examination in the action at law, with the result that the court entered judgment for an excessive amount relying upon defendant's incorrect testimony. Judgment having been entered for an excessive amount, enforcement of the judgment is necessarily against conscience. Upon that broad ground plaintiff asks for the permanent injunction.

An understanding of the belated proof and of defendant's incorrect testimony can only be gathered from a brief recital of the proceedings at law. Defendant brought an action of covenant against plaintiff to recover damages arising from plaintiff's breach of its contract to employ defendant as its president for the period from September 23, 1924, to December 31, 1929, at a salary of $25,000 a year and also to recover $10,000 due defendant on account of his first year's salary under the contract. Plaintiff repudiated the contract of employment on December 31, 1926, when three years of the term of employment had yet to run. Ultimately a judgment of $80,500 was recovered against plaintiff, made up of $75,000 balance of defendant's salary for the remainder of the contract term, less earnings of $4,500 in mitigation of the damages, plus $10,000, an unpaid portion of defendant's first year's salary. Defendant's right to a judgment to the extent of the $10,000 is not seriously questioned.

From the testimony in the lawsuit it appears defendant led the court to believe that his only earnings from outside employment during the three-year period for which he claimed damages was $4,500, and consequently that $4,500 was the only amount deductible in mitigation of damages arising from the breach of contract. The sole evidence as to defendant's activities, after his relations with plaintiff were severed until the time of the trial, was the testimony of defendant himself. Montgomery testified as to outside em-

ployment in the course of an extended cross-examination:

"XQ. What arrangement, if any, did you have with Palmer & Company, prior to June 1st, of this year? * * * A. The arrangement that I had with Palmer & Company was one I sought myself largely with the idea of rehabilitating myself in the business world. I had an office or desk with them for which I paid no rent, and I had no salary. I traded in securities on the stock exchange for awhile, and then we had an agreement that I should buy, employing my judgment, certain securities which would be resold and the profit or loss would be charged against our joint capital, all expenses first being deducted. The return, if the profit did result, was to be divided equally. It was the arrangement. It was all covered on a half sheet of typewriting."

Montgomery further testified:

"XQ. Now, I ask you to tell me what was the total of that amount which was deducted from these joint profits and received by you prior to the distribution of the balance in equal shares between you and Palmer & Company? A. It was equivalent to $1000 a month. * * *

"XQ. From September 1, 1927 to June 1, 1928? A. Yes. * * *

"XQ. Another question, Mr. Montgomery: In this joint account activity between you and Palmer & Company prior to June 1st, 1928, when stocks were purchased for this joint account, was the cost of that purchase borne equally by yourself and by Palmer & Co? * * * A. We had an equal risk of capital there.

"XQ. My question is not confined to equal risk of capital, Mr. Montgomery. My question was who contributed the capital necessary for the acquisition of stocks when stocks were purchased for this joint account? A. Both of us.

"XQ. Each contributed in equal shares the capital necessary for the acquisition of those stocks? A. Yes."

As the action at law was tried by the court without a jury, the court determined the quantum of damages. The court accepted the testimony of defendant, as it was bound to do, and stated in the opinion:

"The plaintiff [Montgomery] diligently endeavored to find like employment, but could not. About September 1, 1927, he and Palmer & Co., a New York brokerage house, invested equal sums of money in a speculative account to be managed by plaintiff.

Profits and losses were to be shared equally with the exception that plaintiff was to receive monthly, from profits before their distribution, the sum of $1,000. This arrangement continued for nine months, during which plaintiff received in that manner from profits an aggregate of $9,000 in excess of the distributive share of Palmer & Co. * * * But that the other one-half part of the sum of $9,000, or $4,500, was not a profit flowing immediately from plaintiff's capital is equally clear. Plaintiff received it as compensation for his personal service in managing the half interest of Palmer & Co. in the joint speculative venture. Though it was not salary payable at all events, it was payment for personal services. I think it sufficiently related in character to plaintiff's salary under the contract to enable defendant to obtain the benefit thereof in mitigation of its damages. * * *

"I find in favor of the plaintiff and against the defendant, and assess plaintiff's damages at the sum of $80,500."

On the basis that the capital investment of Montgomery and of Palmer & Co. were equal, the court held that one-half of the profits from the joint account received by plaintiff constituted a return on his capital and was not to be considered as earnings in reduction of damages for breach of his salary contract.

Montgomery's testimony above recited was incorrect. The verdict of the court based upon that testimony is wrong. The damages awarded to Montgomery are excessive. All this became apparent long after the term of the judgment, when plaintiff obtained a copy of the speculative joint account agreement between Montgomery and Palmer & Co. and learned of the actual transactions incident to the joint account from the firm's books and records.

January 22, 1930, a member of the firm of Palmer & Co. exhibited to one of plaintiff's attorneys a copy of the joint account agreement, the significant parts of which are as follows:

"Agreement—September 1, 1927
"Palmer & Co. (the Firm) and
"H. G. Montgomery (M).

"1. Firm and M form joint trading account, Firm contributing $75,000 and M $25,000. Cash, or securities at market, deposited to protect trades shall not aggregate over $100,000, except when a Firm member and M agree. M is to manage the trading account.

"2. * * *

"3. From net profits of joint account (both trading and arbitrating) remaining after deducting expenses under '2' $1,000 is to be paid M monthly (accumulating when profits or reserve not available) and 25% of balance is to go into reserve account until unused reserve is $25,000, and the net profit then remaining is to be shared equally. * * *

"4. Net losses on trading account to be divided 75% to the Firm and 25% to M, but M is in no case responsible beyond his capital contribution of $25,000 or unused balance.

"5. This agreement is to be effective until October 1, 1930 * * *.

> "[Signed]   Palmer & Co.,
> "[Signed]   H. G. Montgomery."

In fact, this contract was terminated May 31, 1928, when Montgomery became a general partner in the firm of Palmer & Co. One of the partners of the firm testified in this cause: "The proposition was from Mr. Montgomery and he wrote that memorandum [above agreement] in which so far as I know he made no change."

Net profits of $271,327.49 were earned by the speculative joint account managed by Montgomery as shown by the corrected monthly balance sheets taken from the books of Palmer & Co. during the period of nine months from September 1, 1927, to June 1, 1928. From these net profits Montgomery received $9,000, plus $131,163.74, one-half of the balance of the profits, plus $959.50 interest on his capital investment of $25,000. According to the proof in this cause, Montgomery furnished 25 per cent. and not 50 per cent. of the capital. Having received $131,163.74, one-half the profits, it follows from the rule suggested by the trial court that one-half of that amount, or $65,581.87, was not return on capital, but was payment to Montgomery for his services and should have been applied with the $4,500 in diminution of the damages arising from the breach of the salary contract. Those damages were $75,000. The total earnings to be applied in diminution of damages were $70,081.87. The net damages were $4,918.13. Adding the $10,000 fixes the sum to be recovered at $14,918.13 instead of $80,500.

■ Can the equity side of the court right this particular wrong which the law side was powerless to redress after the expiration of the judgment term? The court is constrained by controlling authority to answer this question in the negative. Conditions under which a bill in equity will lie to enjoin the enforcement of a judgment are set out by Mr. Justice Miller in United States v. Throckmorton, 98 U. S. 61, at page 65, 25 L. Ed. 93: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. * * * Relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court." In a very recent case the basis of equitable relief is given: "Generally speaking, the facts which condition the granting of relief by a court of equity against the enforcement of a judgment are: First, that the party seeking the relief had a good defense against the cause of action on which the judgment was entered; second, that he was prevented by fraud, concealment, accident, mistake, or the like from presenting such defense; and, third, that he has been free from negligence in failing to avail himself of the defense." Continental Nat. Bank v. Holland Banking Co. (C. C. A.) 66 F.(2d) 823, 829.

■ At the trial of the law case the burden of proof rested upon plaintiff (there defendant) to offer evidence respecting mitigation of damages. "It seems to be the generally accepted rule that the burden of proof is upon the defendant to show that the plaintiff either found, or, by the exercise of proper industry in the search, could have procured other employment of some kind reasonably adapted to his abilities, and that in absence of such proof the plaintiff is entitled to recover the salary fixed by the contract." 3 Williston on Contracts, § 1360; Mathesius v. Brooklyn Heights R. Co. (C. C.) 96 F. 792. The corollary of this rule is thus stated: "It is not infrequently said that it is the

596

'duty' of the injured party to mitigate damages so far as that can be done by reasonable effort on his part. Since his legal position is in no way affected by his failure to make this effort, however, it is not desirable to say that he is under a 'duty.' His remedy will be exactly the same, whether he makes the effort and avoids harm or not." _1 Restatement of the Law of Contracts, § 336 d.

Having the burden of proof respecting mitigation of damages, plaintiff (there defendant) offered no proof on that subject at the trial of the action, but relied solely upon the cross-examination of Montgomery. With the exercise of diligence plaintiff could have ascertained before trial or before the expiration of the term of the judgment all that it subsequently ascertained. It could have found out where Montgomery was and what he was doing. There is some proof that a director of plaintiff knew before the trial that Montgomery was associated with Palmer & Co. At the trial defendant testified that the terms of his employment with Palmer & Co. respecting the speculative joint account were in an agreement on a half sheet of typewriting. It should be borne in mind that the trial was on December 18, 1928, and the judgment term expired June 10, 1929, a period of nearly six months. It was not until a year after the trial that plaintiff sought and obtained a copy of the agreement between Montgomery and Palmer & Co., although there was no attempt to conceal it. It is clear that plaintiff had a full and fair opportunity to offer proof in mitigation of damages at the trial or to obtain evidence thereof during the judgment term and that it was lacking in due diligence in failing to do so. In Pickford v. Talbott, 225 U. S. 651, 658, 32 S. Ct. 687, 689, 56 L. Ed. 1240, the law is thus stated: "As Chief Justice Marshall said: 'Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.' Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362, 363. Or, as Mr. Justice Curtis expressed it, in Hendrickson v. Hinckley, 17 How. 443, 445, 15 L. Ed. 123, 124: 'A court of equity does not interfere with judgments at law unless the complainant has an equitable defense, of which he could not avail himself at law, because it did not amount to a legal defense, or had a good defense at law, which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents.' One who seeks relief in equity against a judgment at law on the ground that through accident or mistake alone, unmixed with fraud, he has lost the benefit of a defense that would have been available in the court of law, must show entire freedom from fault or neglect on the part of himself and his agents." In Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, 425, 43 S. Ct. 458, 465, 67 L. Ed. 719, Chief Justice Taft recognized as " * * * a most salutary rule of law" the principle that "after parties have had a full and fair opportunity to prepare their case, refuses to permit them to drag out litigation by bringing in new evidence which with due diligence they ought to have discovered before the hearing. The apparent hardship of particular cases should not and cannot weigh against the application of this sound principle."

Without considering the other grounds of defense urged by defendant, the bill of complaint must be dismissed.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½ (28 USCA § 723).